Devlin ADAMS, by Rossini Adams, his parent and natural guardian, Plaintiff-Appellant,

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 938, Docket 75–7098.

United States Court of Appeals, Second Circuit.

Argued June 16, 1975.

Decided Aug. 7, 1975.

Oscar G. Chase, Professor, Brooklyn Law School, Brooklyn, N. Y. (John C. Gray, Jr., Brooklyn Legal Services, Corp. B, Brooklyn, N. Y., of counsel), for plaintiff-appellant.

George H. Weller, Asst. U. S. Atty., Eastern District of New York (David G. Trager, U. S. Atty., Eastern District of New York, Paul B. Bergman, Asst. U. S. Atty., Eastern District of New York, of counsel), for defendant-appellee.

Before GIBBONS[*], GURFEIN and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal by the plaintiff, Devlin Adams, an illegitimate infant, in an action brought by his natural mother, Rossini Adams, from an order of the United States District Court for the Eastern District of New York entered on November 25, 1974, denying the plaintiff's motion for summary judgment and granting judgment on the pleadings for the defendant Secretary of Health, Education and Welfare (Secretary). The action below was initiated to review the Secretary's determination that Adams was not entitled to social security child benefits because, at the time of his insured, wage-earning father's death, the father had not been living with him or contributing support to him. Adams appeals the district court's holding in favor of the Secretary on two grounds: (1) that the district court's finding that Adams did not meet the statutory requirements for benefits was in error, and (2) that even if he did not meet those requirements, he is entitled to the benefits because the statutory scheme, which demands more in the way of proof of de-

---

[*] United States Circuit Judge for the Third Circuit, sitting by designation.

pendency from certain illegitimate children than it does from legitimate and other illegitimate children, is unconstitutional.

■ When the constitutionality of an Act of Congress is questioned, the Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided. *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932). We hold that the appellant has met the requirements for benefits under the Social Security Act (SSA). Therefore, we need not address the constitutional question.

Late in 1968 Peter McGinn, Jr., a fully insured wage earner under the SSA, met Rossini Adams. In early 1969, they entered into a "close personal relationship." In June of 1969, despite the fact that McGinn was married and the father of four children, he and Rossini Adams began sharing his Manhattan apartment above the restaurant that he operated. Ms. Adams maintained a mailing address and a room at her mother's home in Brooklyn. On weekends McGinn visited his wife and children. While McGinn and Ms. Adams were maintaining their joint abode in the Manhattan apartment, she became pregnant. She continued to work as a bookkeeper while McGinn worked at his restaurant.

During this period he contributed money to her whenever she asked for it and, on occasion, even without her request. These payments totalled between $200 and $300 over the seven month period of joint habitation. McGinn gave Ms. Adams the $100 registration fee for the hospital room which he knew she would need when the baby arrived. Additionally, he offered to pay the entire hospital bill which he assumed would amount to approximately $1,000.

In January of 1970, Ms. Adams became depressed over McGinn's class of friends and returned to her mother's home in Brooklyn to await the birth of the child. There was no agreement between the two as to reconciliation or marriage. After moving out, Ms. Adams would visit McGinn at his restaurant several times each week. McGinn tried to convince Ms. Adams that she should not work during the later stages of her pregnancy and that she should return to the apartment where she could do some of his bookkeeping if she felt the need to remain active. McGinn requested that Ms. Adams give him the child to keep and care for if she did not want it after its birth.

On February 18, 1970, McGinn was murdered. On March 8, 1970, Rossini Adams gave birth to the appellant, Devlin Adams.

■ It is by now well settled that the Secretary's findings of fact may not be disturbed on review unless not supported by "substantial evidence," but that his legal conclusions based upon those facts are reviewable in their entirety. *Herbst v. Finch*, 473 F.2d 771 (2 Cir., 1972).

In order for a child to qualify for death benefits under the SSA, that legislation requires, among other things, the child to have been dependent upon his insured parent at the time of the latter's death.[1] While a legitimate child is conclusively presumed to be dependent upon his natural parents,[2] illegitimate children must meet one or more further qualifying provisions. Some illegitimate children must show dependency upon their wage-earning father at the time of his death. Others need only prove paternity by certain statutory indices. A child of a marriage which is invalid only because of a legal impediment existing at the time of the marriage ceremony is deemed to be legitimate and thus presumed to be dependent.[3] An illegitimate child may be deemed to be the legitimate child of an insured individual if that individual had (1) acknowledged paternity of the child in writing, (2) had been decreed by a court to be the father

---

1. 42 U.S.C. § 402(d)(1)(C)(ii).

2. 42 U.S.C. §§ 416(e)(1); 402(d)(3)(A).

3. 42 U.S.C. §§ 416(h)(2)(B); 416(e)(1); 402(d)(3).

of the child, or (3) had been ordered by a court to contribute to the support of the child because the child was his son or daughter.[4] Illegitimate children who can show that they can inherit from the insured individual under the intestacy laws of their domicile must further show that the individual was living with them or contributing to their support at the time of his death.[5] All other illegitimate children must show by evidence satisfactory to the Secretary that at the time of the insured individual's death that individual was indeed the child's father and that he was either living with or contributing support to the child.[6] If Devlin Adams is to qualify for benefits, he must fit into this last category. Under the statute he must show that the insured wage earner was his father and that, at the time of his death, the father was living with him or contributing support to him. Although the administrative law judge found that there was insufficient evidence to conclude that Devlin Adams had been fathered by McGinn, the Secretary has since conceded that McGinn was Devlin's father.

 In trying to determine whether or not the appellant has met the other statutory requirements of 42 U.S.C. Sec. 416(h)(3)(C)(ii), we are confronted with the fact that he was a posthumous child. Although a posthumous child is not foreclosed from benefits merely because he was not born prior to the insured individual's death, *Wagner v. Finch,* 413 F.2d 267 (5 Cir., 1969); *Moreno v. Richardson,* 484 F.2d 899, 904 (9 Cir., 1973); Social Security Ruling 68–22 (CB 1968, 66), that fact makes any standards used to measure support in cases involving living children only marginally helpful. After reviewing the cases in the area, the administrative law judge and the district court both determined that the appellant did not qualify under the "support" test because the support given by McGinn was not "regular" and "continu-

ous." The administrative law judge initially determined that the support must also have been "substantial," but the district court properly held that there is no such legal requirement.

 The Social Security Act is remedial and its humanitarian aims necessitate that it be construed broadly and applied liberally. *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 41 (2 Cir., 1972); *Haberman v. Finch,* 418 F.2d 664, 667 (2 Cir., 1969). The purpose of the sections of the Act involved here is to provide support to children who have lost either the actual support of an insured parent or the anticipated support which that parent would have been expected to give had his death not intervened. *Jiminez v. Weinberger,* 417 U.S. 628, 634, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974). That being the case, the terms of the Act requiring a potential claimant to show dependency should not be construed in such a manner as to withhold benefits in marginal cases. See *Herbst v. Finch, supra,* 473 F.2d at p. 775.

The desire of Congress to provide for children who have lost actual or anticipated support is tempered only by the provisions of the qualifying sections of the Act relied upon by the Secretary to sift out and reject "spurious" claims. See *Jiminez v. Weinberger, supra,* 417 U.S. at pp. 633–634, 94 S.Ct. 2496. Of course, the most serious of the so-called "spurious" claims would be those by such claimants who are in reality not children of the insured wage earner. The present case certainly does not fall into that category since the Secretary has admitted that Devlin Adams was the son of Peter McGinn. The first test of 42 U.S.C. Sec. 416(h)(3)(C)(ii) is thus met.

The other class of "spurious" claims which Congress and the Secretary apparently fear is that of claims from children who have no financial interest in their fathers' deaths but for the possible wind-

---

4. 42 U.S.C. §§ 416(h)(3)(C)(i); 416(e)(1); 402(d)(3).

5. 42 U.S.C. §§ 416(h)(2)(A); 416(e)(1); 402(d)(3).

6. 42 U.S.C. §§ 416(h)(3)(C)(ii); 416(e)(1); 402(d)(3).

fall benefits which the SSA would bestow upon them. In other words, the Secretary fears an onslaught of claims from children who by no stretch of the imagination could be considered "dependent" or who, in essence, lost nothing from their parents' deaths.[7] In our case, Devlin Adams lost the measure of support that he could have expected from his father in the future if death had not intervened. Based upon the evidence adduced at the hearing, it is clear that Devlin Adams does not fall within that group of children who had no extra-statutory financial interest in their fathers' deaths.

Since Congress has not placed any specific dollar amount upon the measurement of support, *Wagner v. Finch, supra*, 413 F.2d at p. 268, our assessment of the appropriate level of support necessary for an illegitimate posthumous child to meet the statutory burden must be guided by common sense and the Congressional desire to benefit all children who have lost the support of insured parents.

■ An unborn child is totally dependent upon its mother for its human needs. Thus, a legal requirement that the father's support of the unborn child must be "regular" and "continuous" is purposeless. Support for an unborn child cannot be measured on that basis. Such a test would prevent almost all posthumous children from qualifying under 42 U.S.C. Sec. 416(h)(3)(C)(ii), a result clearly not warranted, given the purposes of the insurance provisions of the SSA. Applying the "regular" and "continuous" test to the measure of support given Ms. Adams is improper since the dependency of the mother is not at issue.

In determining whether or not the insured, wage earning father was contributing to the support of the illegitimate, posthumous child applicant at the time of the father's death, a more relevant test is called for. We must ask whether the support by the father for the unborn child was commensurate with the needs of the unborn child at the time of the father's death. If it was, then the statutory requirements have been met.

■ In the case at bar, the unborn Devlin Adams received the benefit of McGinn's apartment without any apparent contributions to the rent on his mother's part.[8] Ms. Adams received sporadic cash contributions whenever she needed money and, on occasion, when McGinn simply felt the urge to be generous. Whether or not Ms. Adams used these payments for food, medical care and other living expenses, they relieved her of having to spend her own money for those expenses and thus indirectly benefited the unborn child. These contributions must be considered "support" for the purposes of the Act.

Most telling, however, was the $100 contribution to be used for the hospital bill. There was no other way for McGinn to make a more direct contribution to the support of the unborn child. There was no way for him to furnish food directly for the unborn child's consumption. Nor was there any need to furnish children's clothing. The payment toward the hospital bill, the first tangible expense directly related to the child's well-being after birth, was a pay-

7. In reviewing this fear of the Secretary, we are not unmindful that Congress' fear of such an onslaught of claims was apparently not so overwhelming. The statutory requirement of dependency is "presumed" away in most instances. It is more than likely that there are significant numbers of legitimate and illegitimate children qualifying for benefits under 42 U.S.C. Secs. 402(d)(3) and 416(h)(3)(C)(i) who received much more in the way of benefits than they lost by the death of a parent. These children are conclusively presumed to have been dependent without showing that they had lost anything. Stated another way, claims by children who have lost nothing are not "spuri-ous" unless made by claimants in Devlin Adams' class.

As mentioned at the outset, the appellant has attacked the constitutionality of just this distinction, but, while we recognize the serious nature of this attack, we find it unnecessary to decide the issues raised by it on this appeal.

8. The Secretary's contention that because McGinn would have had to pay the rent even in Ms. Adams' absence, his payment of the rent was not "support" misses the essential point that Ms. Adams and the unborn baby were both supported by the use of that rent-free apartment.

ment directly toward the support of the child. The evidence also reveals that McGinn intended to pay the entire expense of the child's birth. Furthermore, McGinn expressed a desire to care for the child if Ms. Adams did not want it. Short of forcing the mother to take money that she did not need at the time, McGinn could not have contributed any more support than he did. His death prevented him from doing any more after the child's birth. Under these circumstances it is clear that McGinn's support of Devlin Adams was commensurate with his needs at the time of McGinn's death. The law requires no more than that.

This opinion does not conflict with the district court cases cited by the Secretary. See *Bridges v. Sec. of HEW,* CCH Unemployment Ins. Rep., Par. 16,480 (E.D.N.Y., Civ. Action No. 69–C–1327, Nov. 24, 1971); *Crisp v. Richardson,* CCH Unemployment Ins. Rep., Par. 16,-612 (W.D.N.C., Civ. Action No. 2824, Feb. 9, 1972); *Dean v. Richardson,* CCH Unemployment Ins. Rep., Par. 16,767 (S.D.W.Va., Civ. Action No. 71–255–CH, July 3, 1972); and *Mobley v. Richardson,* CCH Uemployment Ins. Rep., Par. 16,439 (W.D.N.C., Civ. Action No. 2675, Sept. 8, 1971). In each of those cases the court found that the claimant had met the "support" test. Moreover, none of those cases involved a posthumous child. In *Norton v. Richardson,* 352 F.Supp. 596 (D.Md.1972), *reconsidered sub nom., Norton v. Weinberger,* 364 F.Supp. 1117 (D.Md.1973) (3 Judge Court), *vacated and remanded,* 418 U.S. 902, 94 S.Ct. 3191, 41 L.Ed.2d 1150 (1974), the district court held that there was no evidence that the wage earner in that case, by contributing only six dollars and some baby clothes to the child when it was born, was supporting the child "regularly" and "continuously" when he, the wage earner, died two years later. While the court in *Norton* used the "regular" and "continuous" language, it is clear that a gift of six dollars and some baby clothes followed by two years of no contributions at all could not meet any conceivable test of support.

The Secretary conceded that Peter McGinn, Jr., the wage earner, was the father of Devlin Adams. The record shows that McGinn, at the time of his death, was contributing to Adams' support for the purposes of satisfying the requirements of 42 U.S.C. Sec. 416(h)(3)(C)(ii).[9] Accordingly, the district court should have entered summary judgment in the appellant's favor.

Reversed and remanded.

---

**9.** Since we have determined that the appellant has satisfied the "support" requirement of the statute, we need not decide whether or not he has met the alternative statutory requirement of "living with" the wage earner at the time of the latter's death.