Kyle DORAN, a minor, by his next
friend, Doris Clark,
Plaintiff-Appellant,

v.

Richard S. SCHWEIKER,* Secretary,
United States Department of Health and
Human Services, Defendant-Appellee.

No. 80–4408.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1982.

Decided July 13, 1982.

* Pursuant to Fed.R.App.P. 43, we substitute the name Richard S. Schweiker, successor to the original appellee, Patricia Roberts Harris, as Secretary of the United States Department of Health and Human Services, formerly Health, Education, and Welfare.

Robert E. Taren, Santa Cruz, Cal., Bruce Douglas Gillies, San Francisco, Cal., for plaintiff-appellant.

Jerry J. Bassett, Asst. Regional Atty., San Francisco, Cal., for defendant-appellee.

Before BROWNING, Chief Judge, SKOPIL and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

The issue in this case is how much support an impoverished father must contribute to render his illegitimate posthumous child eligible for Social Security Child's insurance benefits under 42 U.S.C. § 416(h)(3)(C)(ii).

## I

Kyle Doran, an illegitimate child, claims entitlement to Social Security Child's insurance benefits. To establish eligibility, he must prove that his father, at death, was "contributing to the applicant's support" under 42 U.S.C. § 416(h)(3)(C)(ii).[1] He presented the following undisputed evidence through affidavits and testimony at his Social Security Administration hearing.

Doran is the child of Doris Clark and Kim Mace. Mace and Clark began living together in December 1969. In early January, after Clark discovered that she was pregnant, Mace publicly acknowledged his paternity. At the end of January, after a disagreement, Clark moved out to a cabin on a ranch, where she was provided free lodging, and, in return for taking care of a child, free meals. During the time they lived together, Mace and Clark were both unemployed. Each contributed to the rent and food from other funds. After Ms. Clark left, Mace took a job. He did not contribute money to her support, but at her request, he made three or four trips moving her to the cabin, and hurried out to repair her roof during a rainstorm. Mace killed himself March 16, 1970, when Ms. Clark was three months pregnant. Kyle Doran was born October 3, 1970.

In 1974, Doran applied for but was denied Social Security Child's insurance benefits. He then requested and was granted a hearing before an Administrative Law Judge (ALJ), who found Doran ineligible for bene-

---

1. To establish eligibility for Social Security Insurance survivor benefits, children born of a legitimate marriage need only show that their deceased parent was fully insured. 42 U.S.C. §§ 402(d)(1), 402(d)(3), 416(h)(2)(B). To establish eligibility for the same benefits, illegitimate children must additionally demonstrate their dependency upon their deceased father. They may do so by proving that they are covered by a statutory presumption of dependency, see 42 U.S.C. §§ 402(d)(3), 416(h)(1)(B), 416(h)(2)(B), 416(h)(3)(C)(i). Alternatively, they may prove dependency under 42 U.S.C. § 416(h)(3)(C)(ii) which provides, in pertinent part, that the illegitimate child of a deceased wage earner shall be eligible if the "insured individual is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or *contributing to the support of the applicant* at the time such insured individual died." *Id.* (emphasis added); *see Mathews v. Lucas*, 427 U.S. 495, 497–500, 96 S.Ct. 2755, 2758–2760, 49 L.Ed.2d 651 (1976). Doran contends his father contributed support sufficient to entitle appellant to benefits under 42 U.S.C. § 416(h)(3)(C)(ii).

fits. The Social Security Administration Appeals Council affirmed, but the district court in 1978 remanded the case to the Secretary for reconsideration in light of the Second Circuit's decision in *Adams v. Weinberger*, 521 F.2d 656 (2d Cir. 1975). On remand, the ALJ again found Doran ineligible and the appeals council again affirmed. Doran appeals from the district court's order affirming the ALJ's decision.

## II

The first issue is what test this court should adopt to determine whether a father was contributing sufficient support to his unborn illegitimate child to render the child eligible for benefits under 42 U.S.C. § 416(h)(3)(C)(ii). The statute states that an illegitimate child is eligible for benefits if he can prove his father, at death, was "contributing to the support of the applicant." The statute is silent on the issue of the required amount of support; it contains no language suggesting how much or how often the father must contribute support to render his posthumous child eligible for survivor benefits.

The Secretary contends the correct test for interpreting "contributing to the support of the applicant" is the one now incorporated into the Social Security regulations, whether the father was contributing support to his unborn child in a regular and substantial manner.[2] Doran instead advocates the test formulated by the Second Circuit in *Adams*. There, under circumstances involving an illegitimate posthumous birth, the court examined whether the father's support "was commensurate with the needs of the unborn child at the time of the father's death." 521 F.2d at 660.

The construction of a statute by the agency charged with its administration is entitled to deference if it has a "reasonable basis in law." *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission*, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968). However, "[r]eviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965).

The Social Security Act is remedial, to be construed liberally. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). The primary purpose of the social security scheme at issue is to provide support for dependents. *See Jimenez v. Weinberger*, 417 U.S. 628, 634, 94 S.Ct. 2496, 2500, 41 L.Ed.2d 363 (1974). We find merit in other courts' determinations that the Act's remedial purposes are not served by the Secretary's test. In *Adams v. Weinberger*, 521 F.2d 656, 660 (2d Cir. 1975), the Second Circuit implied that in cases involving illegitimate posthumous births, the Secretary's test is not rationally related to the Act's remedial goals: "An unborn child is totally dependent upon its mother for its human needs. Thus, a legal requirement that the father's support of the unborn child must be 'regular' and 'continuous' is purposeless." The Sixth Circuit characterized the Secretary's test as "ludicrous," even when not applied to illegitimate posthumous births:

> Obviously, continuously regular and substantial contributions is a just stan-

---

2. The Secretary's regulation states:

   Contributions must be made regularly and must be large enough to meet an important part of your ordinary living costs. Ordinary living costs are the costs for your food, shelter, routine medical care, and similar necessities. If the insured person only provides gifts or donations once in a while for special purposes, they will not be considered contributions for your support. Although the insured's contributions must be made on a regular basis, temporary interruptions caused by circumstances beyond the insured person's control, such as illness or unemployment, will be disregarded unless during this interruption someone else takes over responsibility for supporting you on a permanent basis. 20 C.F.R. § 404.366(a)(2)(1981). The ALJ first applied a test similar to, although less restrictive than, the one contained in the Secretary's regulation: whether the father was contributing support to his unborn child "in any regular *or* substantial manner at any time during [the] pregnancy." (emphasis added).

dard when the wage earner's income is regular and substantial. But where the income of a wage earner lacks continuity and substantiality and contributions are nevertheless given, a different criterion should be applied. Where a wage earner is poor and earns an irregular income, it is ludicrous to require regular and substantial payments to his children born out of wedlock or not. The wage-earner is barely supporting himself.

*Boyland v. Califano,* 633 F.2d 430, 434 (6th Cir. 1980). *See also Jones v. Harris,* 629 F.2d 334, 336 (4th Cir. 1980) (the government's test directly contravenes the purposes of the Act "because the loss of small, regular contributions to a poor family would cause the economic dislocation the Act seeks to prevent").

In sum, the Secretary can find no support for a "regular and substantial" test in the remedial goals of the Act. The Secretary nonetheless contends the "regular and substantial" test more effectively promotes administrative convenience, and is thus the more appropriate test under *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), which held that administrative convenience is a constitutionally permissible rationale for congressional distinctions on the basis of illegitimacy to determine eligibility for Social Security benefits. *Id.* at 509, 96 S.Ct. at 2764. The Secretary argues that because the *Adams* test provides only vague guidelines, its resulting case-by-case adjudication hinders the efficient administration of the Act.

Doran, also relying on *Lucas,* responds that even if the Secretary's test promotes administrative convenience, this rationale is constitutionally impermissible if it conclusively denies illegitimate children the opportunity to establish their eligibility for benefits. *See id.* at 512, 96 S.Ct. at 2765; *Jimenez v. Weinberger,* 417 U.S. 628, 635–36, 94 S.Ct. 2496, 2501, 41 L.Ed.2d 363 (1974). The Secretary concedes that the government may not irrebuttably presume that certain illegitimate children are ineligible, but claims the "regular and substantial" test does not deny an illegitimate child the op-

portunity to demonstrate his father's support. The Secretary contends his test merely requires the child to prove his father's support was regular and substantial.

The Secretary's test does not deny all illegitimate children the opportunity to prove their father's support, but, as the Second Circuit found, it "would prevent almost all *posthumous* [illegitimate] children from qualifying" for survivor benefits. *Adams v. Weinberger,* 521 F.2d 656, 660 (2d Cir. 1975) (emphasis added). Indeed, in this case, the mother left the improverished father against his will, undermining both the father's opportunity to support his unborn child and the posthumous child's opportunity to prove his father's support was "regular and substantial." *Cf. Mills v. Habluetzel,* —— U.S. ——, 102 S.Ct. 1549, 1553, 71 L.Ed.2d 770 (1982) (one-year state statute of limitations for illegitimate children to prove paternity held unconstitutional because it provides "an opportunity so truncated that few could utilize it effectively"). Because the "regular and substantial" test denies virtually all posthumous illegitimate children the ability to demonstrate their father's support, the Secretary cannot rely on a claim that his test promotes administrative convenience.

■ We conclude that the Secretary's "regular and substantial" test improperly interprets the statutory mandate and frustrates the goals of the Social Security Act. We therefore refuse to adopt the "regular and substantial" test to determine whether an impoverished father was "contributing to the support" of his illegitimate child under 42 U.S.C. § 416(h)(3)(C)(ii). We instead agree with Doran that the *Adams* test is substantially related to the Act's remedial goals, affording applicants like Doran the opportunity to prove eligibility for benefits. Yet it effectively weeds out spurious claims by placing the burden on the applicant to prove his father's paternity and support, *see Lucas,* 427 U.S. at 503 n.7, 96 S.Ct. at 2761 n.7. We therefore adopt the *Adams* test, whether the father's support "was commensurate with the needs of the unborn child at the time of the father's death." 521 F.2d at

660. In keeping with the Act's remedial goals, we also take into account the economic circumstances of the child's father in determining whether, at death, he was "contributing to the applicant's support." *See Boyland v. Califano,* 633 F.2d 430, 434 (6th Cir. 1980) (applying a test "whether the contributions that were made to the support of his children were important to them given their needs and the wage earner's economic circumstances and ability to support"). *See also Parker v. Schweiker,* 673 F.2d 160, 163 (6th Cir. 1982) ("the 'support requirement' . . . must be evaluated in light of the father and child's actual circumstances").

### III

■ The next issue is whether the ALJ, in reaching his conclusion that Doran was ineligible for benefits under 42 U.S.C. § 416(h)(3)(C)(ii), correctly applied the *Adams* test, and examined whether the father's support was "commensurate with the needs of the unborn child at the time of the father's death."

The ALJ's finding that Mace, an insured individual, was the natural father of Kyle Doran is undisputed. Doran has thus fulfilled the first requirement of 42 U.S.C. § 416(h)(3)(C)(ii).

Doran must also prove that his father was "contributing to [Doran's] support . . . at the time [Mace] died." *Id.* Ostensibly applying the *Adams* test, the ALJ then ruled that Doran was ineligible because Mace had not fulfilled this statutory requirement. Appellant forcefully contends that, when evaluating the importance of Mace's contributions of services, the ALJ unrealistically assessed the needs of a three-month-old fetus when he made the finding that Mace provided "no baby clothing, no crib or layette, no baby bottles, diapers or any other tangible items." We take judicial notice that few parents purchase those items before or during the third month of pregnancy, and conclude that this finding is irrelevant to the issue of the sufficiency of Mace's support.[3]

The ALJ also found that Mace "fail[ed] to make any significant attempt to meet his obligations as a prospective father." To reach that decision, he had to discount Mace's two tangible contributions to Ms. Clark's support, his help in moving her to the ranch and his repairs to her roof, which had cash value. *See* 20 C.F.R. § 404.-366(a)(1) (1981). The ALJ found that "[t]he roof repair ennured [sic] more to the landlord's benefit than to the mother and child because of their relatively short use of the premises." The evidence shows that, as soon as Ms. Clark called, Mace came to fix her cabin in a rainstorm. No evidence was offered to show that the landlord would have repaired the roof. Even if Mace's repairs incidentally benefited the landlord, protecting a mother and her unborn child from the elements certainly constitutes "contributing to the support of the applicant" under 42 U.S.C. § 416(h)(3)(C)(ii).

Doran also protests that the ALJ erred when he concluded that Mace's contributions suffered by comparison with the contributions of the father in *Adams.* In *Adams,* the father, who was married and affluent, provided the mother with a place to stay for about seven months, gave her a total of $200 or $300 during that time, and, "[m]ost telling[ly]," *Adams,* 521 F.2d at 660, contributed $100 toward the hospital bill. The father was killed when the mother was in her eighth month of pregnancy. Considering the relative affluence of the two fathers, Mace arguably contributed more expansively to the mother's support than the father in *Adams.* Mace was impoverished, and made his contributions during the first few months of Ms. Clark's pregnancy, when she had considerably fewer needs.[4]

---

3. Curiously, the ALJ made the irrelevant observation that Mace's suicide "deprived the child of any opportunity to receive the wage earner's support."

4. Finding that "wage earners burdened with equal poverty have nonetheless managed to do a great deal more," the ALJ also concluded that Mace's contributions compared unfavorably with the father's in *Moreno v. Richardson,* 484

In sum, the ALJ misperceived the requirements of the *Adams* common sense test. We hold, as a matter of law, that he misapplied the test in this case. *See Conley v. Ribicoff,* 294 F.2d 190, 194 (9th Cir. 1961) ("[a]n application of the evidentiary facts and their inferences to an erroneous standard ... [is] a fully reviewable question of law.").

Reopening the record would serve no purpose. Doran originally filed his claim eight years ago, and appropriate evidence was developed when the district court previously remanded the case in light of the *Adams* test. Our review of the record convinces us that Mace contributed support according to his own ability and the needs of his three-month-old fetus. When we apply the *Adams* common sense standard of "support," we conclude that Doran is eligible for Social Security Insurance survivor benefits.[5] Accordingly, the Secretary must compute the benefits owing to Doran and enter an appropriate order. *See id.* at 196.

REVERSED AND REMANDED.

---

F.2d 899 (9th Cir. 1973). In *Moreno,* the appeals council had found that "Moreno and the child's mother were not living together and that decedent infrequently gave her small sums of money and on two occasions gave her small gifts." *Id.* at 902–03. We concluded that this finding was supported by substantial evidence, and upheld the ALJ's decision that the *Moreno* father was not contributing to his unborn child's support. *Moreno* is distinguishable because, unlike the father in *Moreno,* Mace died during the very early months of the mother's pregnancy, when an unborn child's needs are minimal. While the father in *Moreno* only sporadically contributed to the mother throughout most of her pregnancy, Mace contributed according to his ability and the minimal needs of the fetus during the three months of Ms. Clark's pregnancy when he was alive. *See id.*

5. The Second Circuit in *Adams* stated that "[t]he purpose of the sections of the Act involved here is to provide support to children who have lost either the actual support of an insured parent *or the anticipated support which that parent would have been expected to give had his death not intervened.*" 521 F.2d at 659 (emphasis added). Appellant relies on the emphasized language to formulate a "loss of anticipated support" test for posthumous birth cases. We need not decide whether this is an appropriate test because we hold that Mace's support was "commensurate with the needs of the unborn child at the time of the father's death."