**Julia McDuffie GAY, on Behalf of Aaron McBRIDE**

v.

**Margaret M. HECKLER, Secretary, Health and Human Services.**

**Civ. No. C79–1914.**

United States District Court, N.D. Georgia, Atlanta Division.

April 2, 1984.

**500**

Deborah Ebel, Atlanta Legal Aid Society, Atlanta, Ga., Deborah S. Kitay, Decatur, Ga., for plaintiff.

Douglas P. Roberto, Asst. U.S. Atty., Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the court on the Secretary's objections to the Magistrate's recommendation. The Magistrate recommends that the Secretary's decision be reversed and that Mrs. Gay's son, Aaron McBride, be awarded surviving child's insurance benefits.

Aaron applied for benefits as the illegitimate child of the deceased wage-earner, John Thomas Beals. After the Secretary denied the benefits, Mrs. Gay appealed to this court on Aaron's behalf. The court remanded to the Secretary with directions that the Secretary determine whether Mrs. Gay received financial assistance from Mr. Beals during her pregnancy and, if so, whether this assistance constituted support for Aaron. The court recommended the legal standard enunciated in *Adams v. Weinberger*, 521 F.2d 656, 660 (2d Cir.1975) ("whether the support by the father for the unborn child was commensurate with the needs of the unborn child at the time of the father's death") as the appropriate standard for determining the support issue.

On remand, a new ALJ considered Aaron's case. The Secretary has adopted his findings and conclusions as her final decision. Based on Mrs. Gay's concession that Aaron could not qualify for benefits under 42 U.S.C. § 416(h)(2)(A),[1] § 416(h)(2)(B), or

---

**1.** This concession, and the ALJ's reliance on it, were reasonable as the law stood at that time.

§ 416(h)(3)(C)(i), the ALJ evaluated the evidence only to determine whether Mrs. Gay had "shown by evidence satisfactory to the Secretary [that Mr. Beals was Aaron's] father …, and … was living with or contributing to [Aaron's] support … at the time [Mr. Beals] died." 42 U.S.C. § 416(h)(3)(C)(ii). The ALJ found that the testimony of Mrs. Gay and of Mr. Beals' mother, brother, and friend, Virlyn Lundy, established that Aaron was Mr. Beals' son, conceived about three months before Mr. Beals' death. He also found that Mrs. Gay and Mr. Beals were not living together at the time of Mr. Beals' death. The ALJ rejected, however, testimony of Mrs. Gay and Mr. Lundy that Mr. Beals had given Mrs. Gay money to buy baby clothes in anticipation of Aaron's birth. The ALJ determined that this testimony was not "evidence satisfactory to the Secretary," 42 U.S.C. § 416(h)(3)(C)(ii), because Mrs. Gay's testimony was inconsistent with her prior written and oral statements, and because Mr. Lundy had not sworn to his testimony or stated how he came by his facts. Implicitly, then, the ALJ found that their testimony was not credible. Consequently, there was no evidence that Mr. Beals had contributed to Aaron's support. Based on these findings, the Secretary again denied benefits. The court reviews her decision under the substantial evidence test. 42 U.S.C. § 405(g).

The Magistrate, in making his recommendation, adverted to the *Adams* standard. He relied on the Secretary's findings that, at the time of Mr. Beals' death, Aaron was a first-trimester fetus; that Mrs. Gay's pregnancy was not confirmed until two days before Mr. Beals died; and that Mrs. Gay did not begin medical care for her pregnancy until after Mr. Beals' death.

The Magistrate concluded that Aaron did not require support from Mr. Beals before Mr. Beals' death, and therefore that no support from Mr. Beals was necessary to entitle Aaron to benefits. Thus the Magistrate did not review the Secretary's finding that the evidence of Mr. Beals' contributions to Aaron's support was not credible.

■ The court agrees with the Secretary's objection to the Magistrate's application of the *Adams* standard. The Magistrate reasoned that, because at the time of Mr. Beals' death Aaron had no needs which Mr. Beals should have met, the *Adams* standard of "support … commensurate with the needs of the unborn child," *Adams*, 521 F.2d at 660, was satisfied. As the Secretary points out, this reasoning makes the support requirements of the Act a complete nullity in cases like Aaron's. The result would be that applicants for surviving child's insurance benefits who are in Aaron's position would have to prove only that they are the natural children of deceased wage-earners. This is not what Congress intended.

■ The Social Security Act generally requires that applicants for surviving child's insurance benefits prove that they were dependent on a deceased wage-earner at the time of the wage-earner's death. 42 U.S.C. § 402(d)(1)(C). Dependency is shown by proof that the wage-earner was living with or contributing to the applicants' support at the time of death. 42 U.S.C. § 402(d)(3). Several categories of children are presumed dependent, though, without such proof. These include children who are legitimate; children who can inherit from the wage-earner's estate under state law; children of couples whose marriages are legally defective for a nonobvi-

Since then, this circuit has declared unconstitutional Georgia's pre-1980 intestacy scheme for inheritance of illegitimate children. *Cox v. Schweiker,* 684 F.2d 310 (5th Cir.1982) (Unit B). The Georgia Supreme Court has held that Georgia's pre-1980 intestacy scheme was unconstitutional as applied to "significant categories of illegitimates whose inheritance rights could be recognized without jeopardizing the orderly administration of estates." *Poulos v. McMahan,*

250 Ga. 354, 364, 297 S.E.2d 451 (1982). The Secretary has not had the opportunity to address Aaron's eligibility for benefits under 42 U.S.C. § 416(h)(2)(A) in light of these decisions, and it would be inappropriate for this court to express any opinion on that issue. Because of the court's disposition of this case, however, a remand to the Secretary for factual findings and decision on that issue is unnecessary.

ous reason; children who have been acknowledged in writing by the wage-earner or who have been decreed to be the children of a wage-earner; and children whom a court has ordered the wage-earner to support. Children in these categories "may be statutorily entitled to benefits even if they have never been dependent upon the father through whom they claim." *Mathews v. Lucas,* 427 U.S. 495, 503, 96 S.Ct. 2755, 2761, 49 L.Ed.2d 651 (1976). The Supreme Court has perceived in this statutory structure a congressional "design to qualify entitlement to benefits upon a child's dependency at the time of the parent's death." *Id.* at 510, 96 S.Ct. at 2764. "The presumption of dependency [which operates in the categories enumerated above] is withheld only in the absence of any significant indication of the likelihood of actual dependency." *Id.* at 513, 96 S.Ct. at 2766. This presumption "serve[s] administrative convenience" and "avoid[s] the burden and expense of specific case-by-case determination in the large number of cases where dependency is objectively probable." *Id.* at 509, 96 S.Ct. at 2764. The court held in *Lucas* that Congress' failure to extend any presumption of dependency to children outside the statutory categories did not violate the due process clause of the Fifth Amendment. *Id.* at 516, 96 S.Ct. at 2767. *Lucas* affirms that Congress' intent was to afford benefits only to children who could demonstrate dependency on an insured wage-earner or who were statutorily relieved from making that demonstration because of a Congressional determination of probable dependency.

Granting benefits to illegitimate children who are born after their fathers' death and whose mothers received no financial support from the fathers in preparation for their birth would be contrary to this Congressional intent because any indicia of dependency on the insured wage-earners would be lacking. The Magistrate's application of the *Adams* standard creates an extra-statutory presumption of dependency, in contravention of Congress' permissible decision to require proof of dependency from all children outside the statutory cate-gories. The court acknowledges, as the Magistrate noted, that the support requirement should not be construed so as to withhold benefits in marginal cases because the Social Security Act is remedial and humanitarian. *Adams,* 521 F.2d at 659. The Magistrate's application of the *Adams* standard is a principled extension of *Adams'* interpretation of the support requirement. Judicial construction of the Act's requirements is limited, however, by the overarching judicial duty to implement Congress' intent. There may be cases where proof of dependency by a showing of financial support is utterly impractical and impossible. Such cases must be commended to the attention of Congress.

■ The court, therefore, rejects the Magistrate's application of the *Adams* standard and proceeds to a review of the Secretary's decision. Mrs. Gay and Mr. Lundy testified that Mr. Beals gave Mrs. Gay money to buy baby clothes. If satisfactory to the Secretary, this evidence would have met the *Adams* standard of support "commensurate with the needs of the unborn child at the time of the father's death." *Adams,* 521 F.2d at 660. As the court noted on remand, "the needs of an unborn child, aside from the physical necessities provided for in the womb, are not as great as the needs of the new-born and therefore the *Adams* standard can often be satisfied by a relatively small amount of assistance from the father." *McDuffie v. Harris,* No. 79–1914 (N.D.Ga. July 23, 1980) (unpublished), at 4. *Compare Doran v. Schweiker,* 681 F.2d 605, 609 (9th Cir. 1982) (court takes judicial notice that few parents make purchases for baby before or during third month of pregnancy, and mother has considerably fewer needs in third than in eighth month of pregnancy). In the first three months of Mrs. Gay's unconfirmed pregnancy, when she had not yet seen a doctor about her medical needs, and when she had no material needs that were not being met by her parents, Mr. Beals' contribution for baby clothes would have been more than commensurate with

Aaron's needs. The ALJ did not suggest otherwise.

The ALJ determined, however, that the uncontradicted testimony offered in Aaron's behalf was not "evidence satisfactory to the Secretary." 42 U.S.C. § 416(h)(3)(C)(ii). The court may not make credibility choices in reviewing the Secretary's decision. *Smallwood v. Schweiker,* 681 F.2d 1349, 1351 (11th Cir.1982); *Page v. Celebrezze,* 311 F.2d 757, 759 (5th Cir. 1963).[2] Nevertheless, in deciding whether this decision may stand, the court must analyze whether the ALJ's theory of credibility is acceptable. *Henson v. City of Dundee,* 682 F.2d 897, 912 (11th Cir.1982) (when factfinder assesses credibility by faulty theory, finding based solely on that assessment cannot stand). *Compare NLRB v. Florida Citrus Canners Cooperative,* 311 F.2d 541, 544 (5th Cir.1963) (on review of board order, applying substantial evidence test, court concluded that board examiner's theory of credibility was unacceptable, so that his findings as to credibility of witnesses were rejected). *See generally* 5 B. Mezines, J. Stein & J. Gruff, Administrative Law § 51.02 & nn. 15–19 (1983) (judicial review, under substantial evidence test, of agency decisions involving credibility determinations concerning uncontradicted testimony).

Because this case on remand was assigned to a different ALJ than had originally presided over the case, the ALJ's credibility determination was based on a reading of the record. He had no opportunity to observe Mrs. Gay's or Mr. Lundy's demeanor. The court need not fear, then, that his credibility determination rested on factors other than the analysis of their testimony that he articulated in his recommended decision.

Virlyn Lundy's statement is an undated, handwritten letter of eight lines, addressed "To the Social Security." Mr. Lundy avers that "[Mr. Beals] gave [Mrs. Gay] money sometime to buy baby clothes before the baby [was] born." The unsworn statement does not recount how Mr. Lundy acquired his knowledge. The court concludes that the ALJ's decision not to credit this statement is unobjectionable.

Mrs. Gay's testimony was presented orally to the first ALJ who handled her case. The second ALJ, whose decision is under review, relied on a transcript of her testimony. He voiced two major doubts about it. First, he found the testimony, "naturally, self-serving and purely within her exclusive knowledge." This is not a permissible ground for finding the testimony not credible. The testimony of interested parties is usually self-serving and often within their exclusive knowledge. Citing *Foss v. Gardner,* 363 F.2d 25, 27 (8th Cir. 1966), the Secretary suggests that the testimony of an interested witness need not be believed. The *Foss* court noted, however, that "[t]he fact that a motive of the claimant was to obtain ... benefits would not, standing alone, be fatal to her establishing a claim...." *Id.* The ALJ's doubts about Mrs. Gay's testimony were occasioned by a conflict he saw between her statement that she did not confirm her pregnancy to Mr. Beals until two days before his death and her statement that he, nonetheless, gave her money for baby clothes before then, when the fetus had no need for them. As a matter of logic, there is no conflict in these statements that renders them implausible. As a matter of human nature, in fact, it seems plausible that a teen-aged parent might purchase baby clothes out of a feeling of responsibility or commitment. The ALJ speculated that, if Mr. Beals had been incarcerated for an unknown period during this time, he may not have had money to buy baby clothes. The possibility that Mr. Beals was incarcerated is suggested in his brother's statement. In support of the ALJ's speculations, the Secretary refers to dictum in *Sabbagha v. Celebrezze,* 345 F.2d 509, 512 (4th Cir.1965) that uncontradicted testimony need not be accepted

---

**2.** Decisions of the Fifth Circuit handed down prior to September 30, 1981 are binding precedent unless overruled or modified by the Eleventh Circuit en banc. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

504

where something in the evidence "furnishes a basis for discrediting it because of its inherent improbabilities." The court cannot agree, though, that the suggestion of an incarceration of unknown length makes it inherently improbable that Mr. Beals had money to buy baby clothes. The ALJ's speculations about Mrs. Gay's testimony appear unfounded and unwarranted.

Second, the ALJ found Mrs. Gay's testimony at odds with her prior statements. In November 1976, a caseworker who interviewed Mrs. Gay reported that, "I called [Mrs. Gay] and verified non-support." As the report makes clear, this refers to Mr. Beals' non-support of Mrs. Gay. "The parents supported her.... There was no way he was supporting her." Mr. Beals' support of Mrs. Gay, though, is not at issue. The question is whether he contributed financial support to Aaron. This evidence, then, does not contradict Mrs. Gay's later testimony. The other contradiction the ALJ found was in the application for benefits Mrs. Gay filed on behalf of Aaron in November 1976. There Mrs. Gay wrote, "John Thomas Beals was not supporting me or contributing to my support before his death." Again, this statement is not inconsistent with her later testimony that her parents provided for her material needs, but Mr. Beals gave her money for baby clothes. Accordingly, the court determines that the ALJ's theory of credibility was flawed. There was no basis for his rejection of Mrs. Gay's uncontroverted testimony. Because there was no affirmative evidence of non-support of Aaron in the record, the court concludes that the Secretary's decision is not supported by substantial evidence. The Secretary's decision is REVERSED and the Secretary is ORDERED to provide Aaron McBride with surviving child's insurance benefits in accordance with the applicable statutes.

So ordered.