Lauretta Kay SMITH, Ariana M. Smith, Plaintiffs-Appellants,

v.

Margaret HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 86–6360.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1987.

Decided June 29, 1987.

A. Orrin Friedman, Santa Ana, Cal., for plaintiffs-appellants.

Joseph Stein, San Francisco, Cal., for defendant-appellee.

Before PREGERSON, NELSON and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Lauretta Kay Smith (Smith) appeals on behalf of her daughter, Ariana Marie Smith (Ariana), from the district court's summary judgment affirming the decision of the Secretary of Health and Human Services (Secretary) to deny Ariana surviving child's insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401–433. Ariana is the posthumous illegitimate child of Robert Hossler, an insured wage earner. The Secretary denied her benefits on the ground that Ariana was not Hossler's dependent child, finding that Hossler was not living with or contributing to Ariana's support at the time of his death. We reverse.

## FACTS AND PROCEEDINGS

Hossler and his wife separated in December 1981. Hossler and Smith, who separated from her husband in October 1981, met in May 1982 and began an intimate relationship. They spent nearly every night at each other's residence and spent all of their free time together. They shared their cars and grocery expenses and did their laundry together. Gas credit card receipts show that Hossler often bought gas for Smith's car. Hossler killed himself on July 27, 1982. Smith confirmed her pregnancy on July 28, 1982. Ariana was born on April 4, 1983.

Smith filed an application for Ariana for surviving child's insurance benefits on Hossler's account on May 27, 1983. After the application was denied on reconsideration, an Administrative Law Judge (ALJ) held a hearing and again denied the application. The ALJ found that (1) Hossler was fully insured under the Act; (2) Hossler was Ariana's biological father; (3) Smith did not show that Hossler was living with her at his death; and (4) Smith did not show that Hossler contributed to the support of Ariana because Hossler did not know of Smith's pregnancy. The Social Security Administration Appeals Council approved the ALJ's decision. The district court affirmed the Secretary's decision.

## ANALYSIS

### I. STANDARD OF REVIEW

We will set aside the Secretary's denial of benefits only if the Secretary's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Kail v. Heckler,* 722 F.2d 1496, 1497 (9th Cir.1984). The Secretary's construction of the Act is entitled to deference if it has a reasonable basis in law. *Doran v. Schweiker,* 681 F.2d 605, 607 (9th Cir.1982). However, we will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute. *Id.*

### II. STATUTORY SCHEME

A child of an insured wage earner is entitled to survivor's benefits under the Act if the child is unmarried, under certain age limits, and depended on the insured at the time of death. 42 U.S.C. § 402(d). Dependency is presumed if a child is legitimate unless adopted by another, *id.* § 402(d)(3), if a child is entitled to take under applicable state intestacy laws, *id.* § 416(h)(2)(A), or if certain other statutory

presumptions apply, *see id.* § 416(h)(2)(B), (3)(A)(i). A child who does not fit into the statutory "deemed dependency" presumptions can establish dependency by showing that the insured deceased parent is (1) the father of the claimant and (2) was living with or contributing to the support of the child at the time of death. *Id.* § 416(h)(3)(C)(ii). The Supreme Court has upheld differential treatment of legitimate and illegitimate children because it found that the statutory classifications were reasonably related to the likelihood of dependency at death. *Mathews v. Lucas,* 427 U.S. 495, 509, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976).

The ALJ determined that Hossler was Ariana's biological father. The parties do not dispute that Ariana does not qualify under the statutory deemed dependency presumptions. The sole question is whether Ariana was dependent on Hossler because he lived with or contributed to her support within the meaning of section 416(h)(3)(C)(ii). As we decide Hossler supported Ariana at the time he died, we need not decide whether Hossler lived with her.

### III. CONTRIBUTING TO CLAIMANT'S SUPPORT

■ The ALJ required the insured to have subjectively intended to support the child in order for the child to establish benefit eligibility under the support requirement. The ALJ reasoned that because Hossler had no actual knowledge of the pregnancy, gifts to Smith could not be construed as evidence of his intention to contribute support to the unborn child. Whether a posthumous illegitimate claimant for child's survivor's benefits must show that her insured parent knew of her conception and intended to contribute to her support is a question of first impression in any circuit.

The primary purpose of the Act is to provide support for dependents of disabled or deceased workers. *Jimenez v. Weinberger,* 417 U.S. 628, 634, 94 S.Ct. 2496, 2500, 41 L.Ed.2d 363 (1974). The purpose of the support requirement is to prevent spurious claims, *id.,* the most serious of

which is one in which the child is not actually the wage earner's child, *Adams v. Weinberger,* 521 F.2d 656, 659 (2d Cir. 1975). The other class of spurious claims would be children who have no financial interest in their father's death. *Id.* The Act "is remedial, to be construed liberally," *Doran,* 681 F.2d at 607, and not so as to withhold benefits in marginal cases, *Adams,* 521 F.2d at 659.

There is no dispute that Ariana is Hossler's child. The only question is her financial dependency on him. A father contributes sufficient support to his unborn illegitimate child so as to qualify the child for survivor's benefits if the father's support was " 'commensurate with the needs of the unborn child at the time of the father's death.' " *Doran,* 681 F.2d at 608–09 (quoting *Adams,* 521 F.2d at 660). In applying this test, we determined in *Doran* that the father's two contributions to the mother's support, i.e., his help in moving her to another home and his repairs to her roof, were sufficient to satisfy the support requirement even though the father provided "no baby clothing, no crib or layette, no baby bottles, diapers or any other tangible items." *Id.* at 609. We noted that few parents purchase such items during the third month of pregnancy. *Id.* We also took into account the father's ability to provide support. *Id.* Thus, we evaluate the support requirement by examining the unborn child's needs, the father's support of the mother during pregnancy, and the father's ability to provide the support.

Nothing in *Doran* suggests that subjective intent to support the fetus is a requirement. *Doran* satisfied the objective standard though the father did not contribute specifically and separately to the baby's future support. There is no logical reason for imposing an intent requirement during the early months of pregnancy when we require no manifestation of separate support for the child. Intent cannot be shown when the father had no knowledge of the pregnancy. Even when the father has knowledge of the pregnancy, intent may be impossible to prove in early pregnancy

cases, because support of the baby would likely be as indirect as it was in *Doran.*

The Secretary has previously focused on support of the mother, an objective standard, in considering dependency requirements for posthumous children, not the subjective intent of the father to support the child:

> [T]he illegitimate child of a deceased father, conceived before, but born after, the father's death, is sufficiently "in being" to be capable of "living with" the father at the time of his death, provided the child is born alive.... Moreover, it is clear that one purpose of the child's benefits provision of the Act is to provide for children of deceased insured individuals. The fact that a worker dies before the birth of a child already "in being" is no legal or equitable reason to foreclose his entitlement.... Similarly, ... if a worker was, in fact, contributing to the support of the mother of an unborn child, he was contributing to the support of the child.

S.S.R. 68–22, 1968 Cum. Bull. 67, 67–68.

The Secretary, however, argues that there is no alternative to the imposition of an intent test in this case because the Act's support requirement would be meaningless if the deceased parent did not purposefully allocate money, goods or services for the benefit of the child. This argument is incorrect. The Secretary's standard would make it impossible for a child to prove dependency under the support test when the wage earner had no knowledge of the new pregnancy.[1] Moreover, the Act's support requirement would not be meaningless without an intent element because the child still must show that the wage earner made financial contributions to the mother during the pregnancy. When an expectant father made little or no support contributions to *either* the mother or child, the

courts have not found the support requirement met. *See, e.g., Chester ex rel. Chester v. Secretary of HHS,* 808 F.2d 473, 477–78 (6th Cir.1987) (father must make at least nominal contribution to expectant mother; single thirty dollar contribution not sufficient); *Johnson ex rel. Bryant v. Secretary of HHS,* 801 F.2d 797, 799 (6th Cir.1986) (father who provided no support to mother nor set aside funds for baby's birth did not satisfy support requirement); *Schaefer ex rel. Schaefer v. Heckler,* 792 F.2d 81, 86 (7th Cir.1986) (same); *but cf. Jones v. Schweiker,* 668 F.2d 755, 758 n. 5 (4th Cir.1981) (contributions to mother prior to conception were not made because of possible pregnancy, therefore do not constitute support of child), *vacated on other grounds,* 460 U.S. 1077, 103 S.Ct. 1763, 76 L.Ed.2d 339 (1983).

As the pregnancy advances or after the child is born, an evaluation of contributions to the child separate from the mother may be more appropriate. *See, e.g., Adams,* 521 F.2d at 660–61 (father's support of the mother, but especially his payment of one hundred dollar hospital registration fee for baby's birth sufficient evidence to satisfy support requirement); *Parsons ex rel. Bryant v. HHS,* 762 F.2d 1188, 1191 (4th Cir.1985) (father who contributed fifty dollars to pay for transportation of mother to doctor's office for prenatal care satisfied support requirement); *Gay ex rel. McBride v. Heckler,* 583 F.Supp. 499, 503–04 (N.D. Ga.1984) (father did not support mother, but by buying baby clothes for unborn child met support requirement). Such considerations are not relevant or appropriate in the early stages of pregnancy, however, when "few parents purchase [baby] items before or during the third month of pregnancy." *Doran,* 681 F.2d at 609.

---

1. Though we do not reach the issue, we note the Secretary's interpretation of the support requirement may run afoul of constitutional precepts. "[T]he government may not irrebuttably presume that certain illegitimate children are ineligible." *Doran,* 681 F.2d at 608. The Supreme Court determined the Act constitutional precisely because all illegitimate children would have an opportunity to prove dependency. *Mathews*

*v. Lucas* 427 U.S. at 510–13, 96 S.Ct. at 2764–66. The narrow subclass of illegitimate children who must rely on the support alternative to prove dependency when the insured died before knowledge of the pregnancy does not have an opportunity to prove dependency under the Secretary's test. The Secretary's interpretation would exclude these children solely because of their illegitimacy.

## CONCLUSION

Addition of an intent requirement to the support test is not consonant with the purposes of the Act, and is not required under the *Doran* standard. The ALJ noted considerable contributions to Smith's support, contributions that meet the support test. We therefore REVERSE the Secretary's denial of benefits and order the Secretary to grant Ariana Marie Smith surviving child's insurance benefits under Title II of the Social Security Act.