120 F.3d 86
 53 Soc.Sec.Rep.Ser. 891, Unempl.Ins.Rep. (CCH) P 15776B
Tonya ALLEN, on Behalf of Harrison ALLEN, a minor child,
Plaintiff-Appellant,
v.
John J. CALLAHAN, Acting Commissioner of Social Security,
Defendant-Appellee.
 No. 96-4066.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 12, 1997.
Decided July 21, 1997.
 
 Elizabeth G. Tegarden (argued), Legal Services of Northwest Indiana, Gary, IN, for Plaintiff-Appellant.
 Carol A. Davilo, Office of the United States Attorney, Dyer, IN, Marc Mates (argued), Social Security Administration, Office of the General Counsel, Region V, Chicago, IL, for Defendant-Appellee.
 Before POSNER, Chief Judge, and EASTERBROOK and EVANS, Circuit Judges.
 TERENCE T. EVANS, Circuit Judge.
 
 
 1
 Tonya Allen brought this action for review of a decision of the Secretary of Health and Human Services[1] denying her son, Harrison, child's insurance benefits on the account of Harrison Moss, the man Ms. Allen says is her child's father. The district court affirmed the decision of the Secretary, and Ms. Allen appeals. Our task is to determine whether the district court was right in concluding that substantial evidence supports the decision of the Agency. 42 U.S.C. § 405(g).
 
 
 2
 Ms. Allen married a man named Charles Allen in 1989. They separated, but were not divorced, in September of 1991. In November 1991 Ms. Allen met Mr. Moss, and they began a sexual relationship, although they were not living together. Allen had a minimum wage job at the time, and Moss, who had a better job, began to "help her out" by forking over between $30 and $60 every two weeks. Allen became aware that she was pregnant around the middle of March, 1992; both she and Moss acknowledged that he was the father.
 
 
 3
 On March 17 (and again on March 25) Moss and Allen went to the Planned Parenthood Association, seeking an abortion. Moss was listed on the association's forms not as the father, but as Ms. Allen's friend, and he paid half of the $285 advance fee for the abortion. However, it was determined that an abortion was not possible because the pregnancy was too far along so the advance fee, minus a $20 charge for blood tests, was refunded. Moss and Allen split the refund equally. About a week later, on April 3, 1992, Moss was shot and killed.
 
 
 4
 Under circumstances in which an unnamed father dies before a child is born, there are categories of children who are eligible for benefits; if a child does not fit one of the categories he cannot receive benefits, even if there is little question that the deceased wage earner was the father. One way to establish entitlement to benefits is for the father to have acknowledged in writing that the child was his; another is to have a court finding of paternity or an order for support; another is to show that the father was living with or contributing toward the support of the child (actually the fetus that was to become the child) at the time of his death. 42 U.S.C. §§ 416(h)(2)(A), (3)(C)(i), (ii). In this case, prior to his death, Moss had not made a written acknowledgment of paternity; there was no court decree that he was the father; there was no court order for support; and he was not living with Ms. Allen.
 
 
 5
 Allen applied for benefits for her son, claiming the child was eligible under Harrison Moss's social security account because Moss was contributing to the support of the child (fetus, again) at the time of his death. She seems to be arguing both that she meets the standards for support we set out in Bennemon ex rel. Williams v. Sullivan, 914 F.2d 987 (7th Cir.1990), and that we should abandon our approach in Bennemon and adopt that of the Court of Appeals for the Second Circuit in Adams v. Weinberger, 521 F.2d 656 (1975).
 
 
 6
 In Bennemon we held, in a case very much like this one, that support must be, as the regulations require, "regular and substantial." 20 C.F.R. § 404.366(a)(2). Accord, Robinson ex rel. Virgies v. Shalala, 34 F.3d 665 (8th Cir.1994). In arriving at our conclusion in Bennemon we looked toward the various approaches taken by other circuits, including that of the Second Circuit in Adams, and we declined to adopt them. Adams requires only that the "support ... [be] commensurate with the needs of the unborn child at the time of the father's death." 521 F.2d at 660. Because a fetus requires little, proving support becomes somewhat easier under that standard, which is, of course, why Allen urges us to adopt the Adams approach. Another approach, which we also declined to adopt, is that in which the adequacy of support is measured by the father's means or ability to pay. See Parker v. Schweiker, 673 F.2d 160 (6th Cir.1982); Jones v. Harris, 629 F.2d 334 (4th Cir.1980); McNeal v. Schweiker, 711 F.2d 18 (3rd Cir.1983). The Ninth Circuit combines the two approaches by looking to both the financial status of the father and the limited needs of the fetus. Doran v. Schweiker, 681 F.2d 605 (1982).
 
 
 7
 Having already considered these approaches in Bennemon, we are not inclined to re-decide the issue in this case. In any event, Allen does not argue that consideration of the economic circumstances of the father would help her in this case; Moss was steadily employed at a job with AT & T. Rather, Allen would have us consider the limited needs of the unborn child. We again conclude that requiring regular and substantial support, if paternity is to be established under the Social Security regulations, is in keeping with the purpose of the benefits: to replace the support lost by a child when his father dies or, in the case of a fetus, to replace the support the unborn child could have expected to receive if the father had lived. Bennemon; Jones ex rel. Jones v. Chater, 101 F.3d 509 (7th Cir.1996).
 
 
 8
 So we must decide whether the record supports the conclusion that Allen has not shown that Moss was providing regular and substantial support. One piece of evidence comes from her own pen. On Allen's application for child's insurance benefits on Moss's account, she said:
 
 
 9
 I was not living with or being supported by Harrison Moss at the time of his death. My husband is alive, not disabled and not age 62. We are separated.
 
 
 10
 At her hearing she explained that she thought that the question to which she framed this answer meant "was he paying child support for the child." As it is written, however, her answer does not refer to child support, but rather to support for her personally; and she said Moss was not providing support to her.
 
 
 11
 Nevertheless, at her hearing and again here, Allen argues that the $30 to $60 Moss gave her every two weeks provided significant support to her, given her limited income. It is no doubt true that the money was a help to her. However, it had nothing to do with supporting her unborn child because, except for perhaps one payment, it was provided before Moss (or Allen, for that matter) knew that Allen was pregnant.
 
 
 12
 Allen also argues that because Moss supported his teenaged children he would also support Harrison. Unfortunately, the issue is whether he was providing support, not whether he might have supported Allen's child, once he was born. Furthermore, even on this point, the evidence is mixed. Unlike the father in Bennemon, who showed delight at the prospect of a child, there is no indication here that Moss was eager to be a father again. The desire to abort the pregnancy, of course, doesn't jibe with a state of glee over the birth which was, when Moss was killed, still many months away.
 
 
 13
 Although it seems quite possible that Moss was little Harrison's father, and it may be that he would have chosen to support the child, he did not, unfortunately, live long enough to show that he would have. There is substantial evidence in the record supporting the decision to deny benefits. The decision of the district court is
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 The administrative decision under review in this case was issued prior to March 31, 1995. Therefore, it was the final decision of the Secretary of Health and Human Services, even though the Commissioner of Social Security has been substituted as defendant-appellee. P.L. No. 103-296 § 106(d)