Rhonda **GILLETT–NETTING, on her own behalf and on behalf of her minor children Juliet O. Netting and Piers W. Netting, Plaintiff,**

v.

Jo Anne **BARNHART, Commissioner of Social Security, et al., Defendant.**

No. CV 02–014 TUC JMR.

United States District Court,
D. Arizona.

Nov. 6, 2002.

Michael O. Miller, Shannon Lori Giles, Quarles & Brady Streich Lang, LLP, Tucson, AZ, Bebe Jill Anderson, Hagit M. Elul, New York City, for plaintiff.

Richard G. Lepley, Tamara L. Fiete, U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Don B. Overall, U.S. Attorney's Office. Tucson, AZ, for defendant.

## *ORDER*

ROLL, District Judge.

Pending before the court are cross-motions for summary judgment by Plaintiff Rhonda Gillett–Netting and Defendant Jo Anne B. Barnhart in her capacity as Commissioner of Social Security (Commissioner). Both sides agree that the facts are undisputed. This order addresses whether Plaintiff's two minor children, who were conceived by means of an *in vitro* fertilization procedure performed more than ten months after Plaintiff's husband's death, are entitled to receive benefits as his survivors under the Social Security Act (Act). For the reasons set forth below, they are not. Additionally, the Court finds that the Act does not violate Juliet's and Piers' equal protection rights.

### Factual Background

On March 13, 1993, Plaintiff Rhonda Gillett, 32, a student, and Robert Netting, 59, a professor of anthropology, were married in California. They resided in Tucson, Arizona. Several months after they were married, they began trying to conceive a child. After Rhonda suffered two miscarriages, she was diagnosed with medical conditions which interfered with her ability to conceive a child and to carry the child to full term without medical intervention. Thereafter, she began fertility treatments.

In mid-December, 1994, Robert was diagnosed with multiple myeloma, a form of cancer. Rhonda and Robert jointly decided to continue with their efforts to have a child. On December 16, 1994, Robert was taken to the emergency room in severe pain. His treating physician recommended that he immediately undergo chemotherapy treatment for the cancer. Because the chemotherapy could have rendered him sterile, Robert delayed treatment so he could deposit and preserve his sperm for Rhonda's fertility treatments.

According to Dr. David Karabinus, the Director of the Andrology Laboratory at the University of Arizona Health Sciences Center, Robert was aware that his stored sperm could be used to impregnate his wife even after his death. He states that Robert agreed to this and paid $400 for the initial and first year of storage. He deposited his sperm from December 18–20, 1994.

Throughout Robert's illness, Rhonda continued with her fertility treatments. Rhonda contends that Robert told her that he wanted her to continue trying to conceive a child even if he died. Robert died on February 4, 1995.

After Robert's death, Rhonda was artificially inseminated with Robert's sperm several times. After the artificial insemination procedure proved unsuccessful, Rhonda's doctor advised her to try *in vitro* fertilization. The *in vitro* fertilization procedure was performed on December 19, 1995. The embryo transfer occurred on December 21, 1995, and a positive pregnancy test was noted on January 4, 1996. On August 6, 1996, Rhonda gave birth to twins, a female named Juliet and a male named Piers.

In March 1997, Robert's estate was distributed. Each of Robert's three children

from his previous marriage received one-sixth of his retirement account. Rhonda received the rest of the account, her and Robert's house in Tucson, and the remainder of the estate. Rhonda also received proceeds as beneficiary from a life insurance policy which she used to provide for the twins.

## Procedural Background

Rhonda, on behalf of Juliet and Piers, filed a claim for child's insurance benefits or survivor's benefits[1] pursuant to 42 U.S.C. § 402(d) of the Social Security Act. The Social Security Administration denied review. Thereafter, Rhonda submitted the matter for review before an Administrative Law Judge (ALJ). Because the parties stipulated that the credibility of witnesses was not at issue, the ALJ did not hold a hearing. On November 19, 1999, the ALJ denied the claim for benefits. On August 2, 2001, the Appeals Council denied Rhonda's request for review and ruled that the ALJ's decision was the final decision of the Commissioner. Rhonda now seeks judicial review of this final determination.

## Cross–Motions for Summary Judgment

Both sides have filed motions for summary judgment. Plaintiff contends that

Juliet and Piers are entitled to survivor's benefits because 1) they are Robert's "children" as defined by the Act, and 2) they were "dependent" upon Robert at the time of his death. Plaintiff also contends that by denying survivor's benefits the Commissioner violated Juliet's and Piers' rights to equal protection under the United States Constitution.[2] The Commissioner maintains that Juliet and Piers are not eligible for survivor's benefits because they are not entitled to inherit from Robert under Arizona's intestacy laws and therefore, neither meet the definition of "children" nor the requirement of "dependency" under the Act.

## A. Statutory Provisions

The Act's purpose in providing survivor's benefits to children is to replace the lost support resulting from the unanticipated calamity of parental death. *Mathews v. Lucas*, 427 U.S. 495, 507, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976).

In order to qualify for survivor's benefits under the Act, Juliet and Piers must meet the requirements of 42 U.S.C. § 402(d)(1).[3] These requirements include

---

1. In addition to providing survivor's benefits to children, the Social Security Act provides survivor's benefits to widows, § 402(e), widowers, § 402(f), mothers and fathers, § 402(g), and parents, § 402(h). In this case, "survivor's benefits" refers to those benefits provided to the children of an insured decedent.

2. Plaintiff's complaint also alleges a violation of her right to make personal and private reproductive decisions and a deprivation of the privileges and immunities of citizenship. Plaintiff does not address either of these claims in her motion for summary judgment. Accordingly, the Court assumes that Plaintiff has decided not to pursue these claims.

3. Section 42 U.S.C. § 402(d)(1) states in relevant part:

(d) Child's insurance benefits

(1) Every child (as defined in section 416(e) of this title) of an individual ... who dies a fully or currently insured individual, if such child—

(A) has filed application for child's insurance benefits,

(B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time elementary or secondary school student and had not attained the age of 19, or (ii) is under a disability ... which began before he attained the age of 22, and

(C) was dependent on such individual—

...

(ii) if such individual has died, at the time of such death ...

shall be entitled to a child's insurance benefit ....

that Juliet and Piers (1) meet the definition of "child" under 42 U.S.C. § 416(e), (2) file an application for benefits, (3) meet certain age, school and/or marital status requirements, and (4) have been dependent on Robert at the time of his death. *Id.* For the reasons discussed, because Juliet and Piers are not "children" as defined by the Act and were not dependent upon Robert at the time of his death, they do not qualify for benefits.[4]

### Children

■ Plaintiff alleges that Juliet and Piers are Robert's children under the Act because they are his natural children. She contends that "natural child" is generally understood to mean "biological child." She points to the Act's Handbook, § 324, which states that "[t]he term 'child' includes the worker's ... [n]atural (i.e., biological) legitimate child, or any other child who would have the right under applicable State law to inherit intestate personal property from the worker as a child ...."

Defendant contends that Juliet and Piers are not "children" under the Act because they cannot inherit as Robert's children under Arizona's intestacy laws.

Under the Act, "[t]he term 'child' means (1) the child or legally adopted child of an individual ...." 42 U.S.C. § 416(e). Section 416(h)(2)(A) states in relevant part:

In determining whether an applicant is the child ... of [an] insured individual ..., the Commissioner of Social Security shall apply such law as would be applied in determining devolution of intestate personal property ... by the courts of the State in which [the insured] was domiciled at the time of his death.... Applicants who according to such law would have the same status relative to taking intestate property as a child ... shall be deemed such.

The Act's implementing regulations also link child status under the Act to whether the child is considered an intestate heir of the decedent. According to 20 C.F.R. § 404.354, "[an individual] may be related to the insured person in one of several ways and be entitled to benefits as his or her child, i.e., as a natural child, legally adopted child, stepchild, grandchild, stepgrandchild or equitably adopted child...."

Section 404.355(a) of the regulations states that an individual may be eligible for benefits as an insured's natural child if any of four specific situations apply. Because Rhonda and Robert were married, three of the four situations are inapplicable.[5] The fourth situation requires that the child have been able to inherit the insured's personal property as his or her natural child under State inheritance laws.

Section 404.355(b)(1) explains that in determining whether an individual has inheritance rights as the natural child of the insured, the Commissioner will "use the law on inheritance rights that the State courts would use to decide whether [the individual] could inherit a child's share of the insured's personal property if the in-

4. The ALJ did not address the "child" requirement of § 402(d). Rather, he determined that Juliet and Piers were ineligible for benefits based on their failure to meet the "dependency" requirement of § 402(d).

5. These three situations are: (1) the individual is the insured's natural child and the insured and the individual's mother or father went through a ceremony which would have resulted in a valid marriage between them except for a "legal impediment," (2) the individual is the insured's natural child and although the individual's mother and father did not marry the insured, the insured has acknowledged or been decreed by a court to be the mother or father of the individual or has been ordered to provide support to the individual, and (3) the individual's mother or father has not married the insured but there is evidence that the insured is the individual's natural mother or father.

sured were to die without leaving a will." In cases where the insured is deceased, the laws of the State where the insured had his or her permanent home when he or she died apply. C.F.R. § 404.355(b)(1). In this case, Arizona's intestacy laws apply.

Accordingly, whether Juliet and Piers meet the definition of "children" under the Act depends on whether they could inherit from Robert under Arizona's intestacy laws.

*Arizona's intestacy law*

Plaintiff argues that Juliet and Piers are entitled to inherit under Arizona's intestacy laws as the natural children of Robert. She argues that (1) the timing of conception and the marital status of the children's parents are irrelevant, (2) because Arizona law does not specifically exclude posthumously conceived children from inheritance, it can be assumed that Arizona intended to include them, and (3) in intestacy cases, the courts attempt to discover and carry out the intent of a decedent in distributing his or her property. As to the last argument, Plaintiff points to facts indicating that Robert intended for her to bear his children even after his death.

Defendant argues that Arizona's intestacy laws do not provide for posthumously conceived children. She contends that in order to be an heir in Arizona, the individual must be in existence at the time of the decedent's death. She points to Arizona's after-born heir provision which allows a child "in gestation" at the time of the decedent's death to qualify as an heir if the child lives at least 120 hours after his or her birth. A.R.S. § 14–2108.

Under A.R.S. § 14–2103, "[a]ny part of the intestate estate not passing to the decedent's surviving spouse ... or the entire estate if there is no surviving spouse passes in the following order to the following persons who survive the decedent: ... To the decedent's descendants by repre-

sentation ...." " 'Descendant[s]' means all of the decedent's descendants of all generations, with the relationship of parent and child at each generation." A.R.S. § 14–1201(11). Except for adopted children, "for the purposes of intestate succession, a person is the child of that person's natural parents, regardless of their marital status." A.R.S. § 14–2114(A), (B).

■ Under Arizona intestate succession laws, heirs must "survive" the decedent, A.R.S. § 14–2104(A), indicative that they must be in existence at the time of the decedent's death. An exception to this survival requirement is Arizona's after-born heir provision. That provision states: "A child in gestation at a particular time is treated as living at that time if the child lives at least one hundred twenty hours after its birth." A.R.S. § 14–2108.

Juliet and Piers were neither born nor "in gestation" at the time of Robert's death. Accordingly, they could not inherit from Robert under the plain language of Arizona's intestacy laws.

*Decedent's intent*

Plaintiff contends that Arizona's intestacy laws attempt to effectuate the intent of the decedent and that Robert intended for Rhonda to bear his children even after his death. In so arguing, Plaintiff relies upon A.R.S. § 14–1102(B)(2), which states that one of the purposes and policies of Arizona's probate code is "[t]o discover and make effective the intent of a decedent in distribution of his property." This provision, however, applies to the entire probate code, including estates disposed of by will. By its very nature, succession by will frequently involves interpretation, and a cardinal rule of interpretation is to attempt to ascertain the intent of the testator. *See, e.g., In re Estate of Johnson,* 168 Ariz. 108, 110, 811 P.2d 360, 362 (Ariz.App.1991) (citations omitted).

The law of intestate succession provides for a specific order of distribution of a decedent's property when no will exists. The intent of the decedent is not a factor. Plaintiff valiantly attempts to redefine the issue as being whether, under any state of facts, Juliet and Piers could have been heirs under Arizona law. The issue is much narrower, however. The crucial issue is whether, under Arizona's intestate succession laws, Juliet and Piers would have been entitled to share in Robert's estate. Because Juliet and Piers were not in existence until the successful *in vitro* fertilization of their mother ten months after Robert's death, clearly, the answer is no.

### Dependency

Although Juliet and Piers do not meet the "child" requirement of § 402(d) and, on that basis alone, are ineligible for survivor's benefits under the Act, because the parties address it and because the ALJ denied benefits based upon it, the Court will briefly address the "dependency" requirement of § 402(d).

■ Because Juliet and Piers were not in existence at the time of Robert's death, they cannot demonstrate actual dependency. Even in the absence of actual dependency, however, the Supreme Court, interpreting § 402(d)(3),[6] has held certain children are presumed dependent and need not demonstrate actual dependency. The Supreme Court stated: "Unless the child has been adopted by some other individual, a child who is legitimate, or a child who would be entitled to inherit personal property from the insured parent's estate under the applicable state intestacy law, is considered to have been dependent at the time of the parent's death." *Mathews*, 427 U.S. at 498–99, 96 S.Ct. 2755.

■ Juliet and Piers cannot demonstrate dependency based on their ability to inherit from Robert under Arizona's intestacy laws. As to the legitimacy element, Arizona treats all children as legitimate by statute. A.R.S. § 8–601.[7] This statute, however, was enacted to prevent the State from treating children of unwed parents differently than children of married parents. *See In re Appeal in Pima County Juvenile Severance Action,* 179 Ariz. 86, 94 n. 8, 876 P.2d 1121, 1129 n. 8 (1994). The statute does not salvage Plaintiff's claim in this case. In any event, whether Juliet and Piers are Robert's "legitimate" children as defined by the Act is irrelevant as they do not meet the "child" requirement of § 402(d).

### Plaintiff's reliance on Woodward, Kolacy and the Shultz opinion letter

Plaintiff relies on a Massachusetts Supreme Court opinion, a New Jersey Superior Court decision, and a ten-year-old opinion letter from the Regional Chief Counsel.

#### (1) *Woodward decision*

In *Woodward v. Commissioner of Social Security,* 435 Mass. 536, 760 N.E.2d 257 (2002), the Massachusetts Supreme Court ruled that posthumously conceived children may, under certain circumstances, qualify as beneficiaries under Massachusetts' intestacy laws. There, at the time

---

**6.** This provision states:

A child shall be deemed dependent upon his father ... at the time specified in [§ 402(d)(1)(C) ] unless, at such time, such individual was not living with or contributing to the support of such child and—(A) such child is neither the legitimate nor adopted child of such individual, or (B) such child has been adopted by some other individual.

**7.** This statute provides:

Every child is the legitimate child of its natural parents and is entitled to support and education as if born in lawful wedlock.

Warren Woodward learned he had leukemia, he and his wife, Lauren, had no children. Because he was warned that his treatment could render him sterile, Warren preserved his sperm. He then underwent a bone marrow transplant. The transplant was unsuccessful and Warren died in October 1993. Two years later, Lauren gave birth to twin girls, who were conceived through artificial insemination using Warren's preserved sperm. Lauren applied for survivor's and mother's benefits under § 402(d) of the Act. The Commissioner rejected her claims, finding that the twins did not qualify for benefits because they were not entitled to inherit from Warren under Massachusetts' intestacy laws. Lauren appealed to the federal district court, which certified to the Massachusetts Supreme Court the question of whether posthumously conceived children had inheritance rights under Massachusetts' intestacy law.

After reviewing Massachusetts' intestacy law and considering the State's interests in promoting the best interests of children, protecting the interests of children who are alive or conceived before the intestate parent's death, and promoting the orderly and prompt administration of estates, the Massachusetts Supreme Court held that a posthumously conceived child may enjoy inheritance rights under Massachusetts' intestacy laws provided that 1) the surviving parent or child's representative demonstrates a genetic relationship between the child and the decedent and 2) the decedent affirmatively consented to the posthumous conception and support of any resulting child. 435 Mass. at 557, 760 N.E.2d at 272. In addition, the Massachusetts Supreme Court stated that even where these conditions are met, time limitations may preclude a claim for inheritance rights and in any case involving the establishment of inheritance rights, notice must be given to all interested parties. *Id.*

*Woodward* is distinguishable. *Woodward* applies Massachusetts' intestacy law, which contains a provision stating that "[p]osthumous children shall be considered living at the death of their parent." 435 Mass. at 544, 760 N.E.2d at 264. Although noting that "posthumous children" is not defined by the legislature, the Massachusetts Supreme Court emphasized that the posthumous children provision does not contain a requirement that the children be in existence at the time of the decedent's death, even though the legislature could have done so. 435 Mass. at 545, 760 N.E.2d at 264. The Massachusetts posthumous children statute, however, was enacted in 1836. 435 Mass. at 544, 760 N.E.2d at 264. In 1836, what the Massachusetts Supreme Court describes in 2002 as "novel questions involving the rights of children born from assistive reproductive technologies," 435 Mass. at 556, 760 N.E.2d at 272, were never contemplated. Arizona's intestate succession statutes contain no such "posthumous children" provision. Additionally, Arizona's intestate succession statutes, unlike Massachusetts', contain an after-born heir provision which specifically states that a child must at least be "in gestation" at the time of decedent's death.

### (2) *Kolacy decision*

The second case addressing the issue and relied upon by Plaintiff is *In re Estate of Kolacy*, 332 N.J.Super. 593, 753 A.2d 1257 (2000). There, William Kolacy died in April 1995. Before his death, he stored his sperm in a sperm bank. Eighteen months after William's death, his widower, Mariantonia, used his sperm to become pregnant. She gave birth to twin girls, Amanda and Elise. She then sought child's insurance benefits under § 402(d) of the Act, which were denied by the ALJ.

While pursuing her administrative claim at the appellate level, Mariantonia filed an action in the Superior Court of New Jersey, seeking a state court declaration that her twins qualified as intestate heirs of William. The New Jersey Superior Court judge acknowledged that his ruling would not be "dispositive of the rights of plaintiff and the children under federal law." 332 N.J.Super. at 598, 753 A.2d at 1259. The judge nevertheless exercised jurisdiction, expressing concern that the "federal adjudicatory processes" would "reach a result based in part upon an incorrect determination by federal tribunals of New Jersey law." *Id.* The judge then observed that "[t]here are no New Jersey decisions dealing with the central issue presented in this case[,] whether Amanda and Elyse Kolacy, conceived after the death of their biological father and born more than eighteen months after his death, qualify as his heirs under state intestate law." 332 N.J.Super. at 599, 753 A.2d at 1260. The judge proceeded to issue an advisory opinion, stating: "I believe it is entirely fitting to recognize that Amanda and Elyse Kolacy are the legal heirs of William Kolacy under the intestate laws of New Jersey." 332 N.J.Super. at 605, 753 A.2d at 1264.

Because, *inter alia,* this decision addresses New Jersey law, it is not persuasive authority.

### (3) *Shultz opinion letter*

The Regional Chief Counsel letter, referred to as the *Schultz* opinion letter, is also of little significance. *See* A.R. 51–52. The Shultz opinion letter addressed whether posthumously conceived children are considered "children" of the decedent for purposes of intestate succession under Arizona law and concluded that posthumously conceived children could inherit in Arizona if it is shown that the decedent consented to the posthumous use of his sperm. The opinion letter, however, did not rely on any Arizona law, is over ten years old, and is in direct conflict with an opinion letter issued in this case, which did address Arizona's intestacy laws. *See* AR at 115–120.

### B. Equal Protection Claim

As a second basis for setting aside the ALJ's decision denying benefits, Plaintiff argues that the ALJ's decision violates Juliet's and Piers' equal protection rights under the Fifth Amendment to the United States Constitution. Specifically, she contends that the ALJ's interpretation of Arizona intestacy laws violates equal protection by 1) creating an "impenetrable barrier" to benefits based on the circumstances of Juliet's and Piers' births, and 2) relying on a classification that does not bear a substantial relationship to an important governmental objective.

Plaintiff frames the issue presented as being whether the Commissioner's reliance on Arizona intestacy laws to determine eligibility for survivor's benefits treats biological children differently depending on the circumstances of their birth.[8]

"[A] non-contractual claim to receive funds from the public treasury enjoys no constitutionally protected status, ... though of course Congress may not invidiously discriminate among claimants on the basis of a 'bare congressional desire to harm a politically unpopular group,' ... or on the basis of criteria which bear no rational relation to a legitimate legislative goal." *Weinberger v. Salfi,* 422 U.S. 749, 772, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (citations omitted). The Supreme Court has stated that because the Social Security "program is a massive one, and requires

8. Plaintiff states that she is not challenging the constitutionality of Arizona's intestacy laws but rather the Commissioner's incorporation of Arizona's intestacy laws into her eligibility rules.

Congress to make many distinctions among classes of beneficiaries while making allocations from a finite fund", a court should uphold a challenged classification unless it "manifests a patently arbitrary classification, utterly lacking in rational justification." *Bowen v. Owens*, 476 U.S. 340, 345, 106 S.Ct. 1881, 90 L.Ed.2d 316 (1986) (citation and internal quotations omitted).

■ Juliet and Piers are not being treated differently than other biological children under Arizona's intestacy laws due to the fact that they were conceived by *in vitro* fertilization (*i.e.*, the circumstances of their births). Rather, they are treated differently because they were neither born nor "in gestation" at the time of Robert's death. Therefore, the alleged discrimination is between those biological children in existence at the time of the decedent's death and those not in existence at the time of the decedent's death.

Because this discrimination does not involve a fundamental right or a suspect or quasi-suspect class, the rational basis test applies. *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) ("[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end.") (citation omitted). The Supreme Court has already found that "conditioning entitlement [to benefits] upon dependency at the time of death is not impermissibly discriminatory in providing only for those children for whom the loss of a parent is an immediate source of the need." *Mathews*, 427 U.S. at 507, 96 S.Ct. 2755 (citations omitted). The Court has also found that applying a State's intestacy laws to determine dependency is reasonable. *Id.* at 514, 96 S.Ct. 2755 ("[W]here state intestacy law provides that a child may take personal property from a father's estate, it may reasonably be thought that the child

will more likely be dependent during the parent's life and at his death.").

■ Accordingly, it is entirely rational for the Social Security Administration to condition dependency on the intestacy laws of the applicable State and it is consistent with the purpose of the Act. *Id.* at 507, 96 S.Ct. 2755 (the Act's purpose in providing survivor's benefits to an insured decedent's children is to replace the unanticipated lost support resulting from the decedent's death) (citations omitted).

Here, Juliet and Piers never lost Robert's financial support. He died almost a year before they were conceived. They were never dependent nor could they have anticipated being dependent on him.

Plaintiff relies heavily on *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), and *Daniels v. Sullivan*, 979 F.2d 1516 (11th Cir.1992), to support her equal protection claim. Both of these cases involve illegitimate children. In addition, neither of them involve children conceived after the death of the insured. Although these cases discuss basic equal protection considerations, they are clearly distinguishable.

### Conclusion

In order for Juliet and Piers to be eligible for survivor's benefits under the Social Security Act, they must have been eligible to inherit property under Arizona's intestate succession provisions. Only a child who survives the deceased parent or was "in gestation" at the time of the deceased parent's death may inherit under Arizona's intestacy laws. Because Juliet and Piers had not been conceived at the time of Robert's death, they are not entitled to survivor's benefits under the Act. Additionally, their equal protection rights have not been violated. The ALJ properly denied benefits.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is **GRANTED.**