Rhonda **GILLETT–NETTING**, on her own behalf and on behalf of her minor children; Juliet O. Netting and Piers W. Netting., Plaintiff–Appellant,

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.**

No. 03–15442.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 2004.

Filed June 9, 2004.

Hagit M. Elul, Hughes, Hubbard & Reed, New York, NY, briefed and argued the cause for the plaintiff-appellant. William T. Bissett, Hughes, Hubbard & Reed, New York, NY, and Priscilla J. Smith, Center for Reproductive Rights, New York, New York, were also on the briefs.

Sharon Swingle, U.S. Department of Justice, Washington, DC, briefed and argued the cause for the defendant-appellee. William Kanter, U.S. Department of Justice, Washington, DC, was also on the briefs.

Before: B. FLETCHER, REINHARDT, Circuit Judges, and RESTANI, Judge.*

BETTY B. FLETCHER, Circuit Judge:

Plaintiff–Appellant Rhonda Gillett–Netting ("Gillett–Netting"), on her own behalf and on behalf of her minor children Juliet O. Netting and Piers W. Netting, appeals the district court's grant of summary judgment for the Commissioner of Social Security ("Commissioner"). The district court affirmed the Commissioner's decision holding that Juliet and Piers are not entitled to child's insurance benefits based on the earnings of their deceased father, Robert Netting ("Netting"). Ten months after Netting died, his wife conceived Juliet and Piers using sperm that he deposited before undergoing chemotherapy for cancer. Gillett–Netting argues that the district court erred in holding that Juliet and Piers are not eligible for child's insurance benefits because they are not Netting's children under the Social Security Act ("Act") and were not dependent on Netting at the time of his death. Because Juliet and Piers are Netting's legitimate children under Arizona law, and therefore are deemed dependent on Netting for child's insurance benefits, we reverse the decision of the district court and remand to the district court with instructions to further remand to the Commissioner for an award of benefits.[1]

## I. BACKGROUND

In December 1994, Netting was diagnosed with cancer. At the time, he and his wife, Gillett–Netting, were trying to have a baby together, but Gillett–Netting suffered from fertility problems that had caused her to miscarry twice. Because doctors advised Netting that chemotherapy might render him sterile, he delayed the start of his treatment for several days so that he could deposit his semen at the University of Arizona Health Sciences Center, where it was frozen and stored for later use by his wife. Netting quickly lost his battle with cancer. He died on February 4, 1995,

---

* The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

1. Gillett–Netting also argues that applying the Act to preclude the award of child's insurance benefits to posthumously conceived children violates the children's right to equal protection of the laws. Because we conclude that Juliet and Piers are entitled to benefits under the Act, we do not reach Gillett–Netting's equal protection claim.

before his wife was able to conceive. Earlier, Netting confirmed that he wanted Gillett–Netting to have their child after his death using his frozen sperm. In-vitro fertilization of Gillett–Netting's eggs with Netting's sperm was undertaken successfully on December 19, 1995. The resulting embryos were transferred to Gillett–Netting on December 21, 1995, and Juliet and Piers Netting were born on August 6, 1996.

On August 19, 1996, Gillett–Netting filed an application on behalf of Juliet and Piers for Social Security child's insurance benefits based on Netting's earnings. The Social Security Administration (SSA) denied the claim initially and upon reconsideration, and Gillett–Netting timely filed a request for a hearing before an Administrative Law Judge (ALJ). Because neither the material facts nor the claimants' credibility were disputed, the parties agreed to submit the case to the ALJ without an administrative hearing.

The ALJ denied Gillett–Netting's claim, holding that Juliet and Piers are not entitled to benefits because they were not dependent on Netting at the time of his death. The ALJ held that "the last possible time to determine dependents [sic] on the wage earner's account is the date of the death of the wage earner." Therefore, children conceived after the wage earner's death cannot be deemed dependent on the wage earner. The Social Security Appeals Council denied Gillett–Netting's request for review, and the ALJ's decision became the final decision of the Commissioner.

Gillett–Netting filed a complaint in district court, alleging that the decision denying Juliet and Piers benefits was not sup-

ported by substantial evidence, was not in accordance with the law, and denied them equal protection of the laws.[2] The parties filed cross-motions for summary judgment, and the district court granted summary judgment for the Commissioner. The district court held that Juliet and Piers do not qualify for child's insurance benefits because they are not Netting's "children" under the Act and they were not dependent on Netting at the time of his death. *See Gillett–Netting v. Barnhart*, 231 F.Supp.2d 961, 965–69 (D.Ariz.2002). Additionally, the district court held that Juliet's and Piers's right to equal protection of the laws was not violated by applying the Act to deny them child's insurance benefits. *Id.* at 969–70. After the district court denied Gillett–Netting's motion for reconsideration, she timely filed an appeal to this Court.

## II. STANDARD OF REVIEW

■ We review de novo the district court's decision upholding the denial of social security benefits. *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir.2002). The Commissioner's denial of benefits may be set aside when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Id.*

## III. DISCUSSION

Developing reproductive technology has outpaced federal and state laws, which currently do not address directly the legal issues created by posthumous conception. Neither the Social Security Act nor the Arizona family law that is relevant to determining whether Juliet and Piers have a right to child's insurance benefits makes

---

2. Gillett–Netting's complaint also argued that the ALJ's decision unlawfully burdened her substantive due process right to privacy in reproductive decision-making and denied Juliet and Piers the privileges and immunities of

citizenship, but she did not pursue these claims in her district court motion for summary judgment, *see Gillett–Netting v. Barnhart*, 231 F.Supp.2d 961, 964 n. 2 (D.Ariz. 2002), and she does not raise them on appeal.

clear the rights of children conceived post-humously. Our task is to determine whether Juliet and Piers have a right to child's insurance benefits under the law as currently formulated.[3]

## A. *Demonstrating Entitlement to Child's Insurance Benefits*

Under the Act, every child is entitled to benefits if the claimant is the child, as defined in 42 U.S.C. § 416(e), of an individual who dies fully or currently insured; the child or the child's representative files an application for benefits; the child is unmarried and a minor (or meets disability requirements) at the time of application; and the child was dependent on the insured wage earner at the time of his death. 42 U.S.C. § 402(d)(1); *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir.1987). It is undisputed that Netting was fully insured under the Act when he died, that Juliet and Piers are his biological children and are unmarried minors, and that Gillett–Netting filed an application for child's insurance benefits on their behalf. Because we conclude that Juliet and Piers are Netting's legitimate children, they are considered to have been dependent under the Act and are entitled to benefits.

## B. *Juliet and Piers are Netting's Natural, Biological Children*

■ The Act defines "child" broadly to include any "child or legally adopted child of an individual," as well as a stepchild who was the insured person's stepchild for at least nine months before the insured person died, and a grandchild or stepgrandchild of the insured person under certain circumstances. *See* 42 U.S.C. § 416(e). Courts and the SSA have interpreted the word "child" used in the definition of "child" to mean the natural, or biological, child of the insured. *See, e.g., Weinberger v. Salfi*, 422 U.S. 749, 781 n. 12, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (noting that a "natural or adopted child" of a wage earner need not meet the nine-month time requirement to which stepchildren are subject); *Tsosie v. Califano*, 630 F.2d 1328, 1333 (9th Cir.1980) ("Under § 416(e), the term 'child' includes a person's natural children and his legally adopted children."); 20 C.F.R. § 404.354 (stating that a claimant may be "entitled to benefits as [an insured person's] child, i.e., as a natural child, legally adopted child, stepchild, grandchild, stepgrandchild, or equitably adopted child").

The Commissioner argues and the district court held that "child" is further defined by 42 U.S.C. §§ 416(h)(2), (3), and that Juliet and Piers cannot be considered the children of Netting unless they meet the requirements of one of these provisions.

These sections were added to the Act to provide various ways in which children could be entitled to benefits even if their parents were not married or their parentage was in dispute. They have no relevance to the issue before us. As the Fourth Circuit explained "[a]n *illegitimate* claimant may establish that he is a 'child' for eligibility purposes under either of three critical provisions of the Act" in § 416(h). *McMillian by McMillian v.*

---

**3.** Although no circuit court has previously considered the novel issue presented in this case, a well-reasoned opinion of the Massachusetts Supreme Judicial Court recently addressed related state law questions. *See Woodward v. Comm'r of Soc. Sec.*, 435 Mass. 536, 760 N.E.2d 257 (2002) (holding that a posthumously conceived child could inherit from a deceased sperm donor under Massachusetts intestacy law where parentage is established and the donor consented both to reproduce posthumously and to support any resulting child).

*Heckler,* 759 F.2d 1147, 1150(4th Cir.1985) (emphasis added).

> Until 1965, § 416(h)(2) provided the sole means by which illegitimates could establish entitlement to benefits as dependent children, with § (h)(2)(A) the primary vehicle. Under that provision, an illegitimate claimant could establish entitlement to benefits by proving his entitlement to inherit from the insured wage earner as a "child" under the intestate succession law of the state of the insured's domicile. In 1965, § (h)(3)(C) was added specifically to provide other means by which entitlement might be established.

*Id.* at 1152.

Under the current version of § 416(h), a claimant whose parentage is disputed is deemed to be the child of an insured individual if: (1) the child would be entitled to take an intestate share of the individual's property under the laws of the state in which the individual resided at death; (2) the child's parents went through a marriage ceremony resulting in a purported marriage between them that, but for a legal impediment unknown to them at the time, would have been a valid marriage; (3) the deceased wage earner acknowledged the claimant as his or her child in writing; (4) the deceased wage earner, before dying, had been decreed by a court to be the parent of the claimant; (5) the deceased wage earner, before dying, had been ordered by a court to contribute to the support of the claimant because the claimant was his or her child; or (6) the insured individual is shown by evidence satisfactory to the Commissioner to have been the parent of the claimant and to have been living with or contributing to the support of the claimant at the time that he died. *See* 42 U.S.C. §§ 416(h)(2), (3).

Although these provisions offer means of "determining whether an applicant is the child ... of a fully or currently insured individual," *id.* at § 416(h)(2)(A), when parentage is disputed, nothing in the statute suggests that a child must prove parentage under § 416(h) if it is not disputed. We conclude that these provisions do not come into play for the purposes of determining whether a claimant is the "child" of a deceased wage earner unless parentage is disputed.[4] In this case, the Commissioner concedes that Juliet and Piers are Netting's biological children. Therefore, we conclude that the district court erred by holding that Juliet and Piers are not Netting's children for the purposes of the Act. *See, e.g., Tsosie,* 630 F.2d at 1333(noting that "child" includes any biological child of the insured wage earner).

## C. *Dependency.*

■ As the district court stated, "[b]ecause Juliet and Piers were not in existence at the time of Robert's death, they cannot demonstrate actual dependency" on him at the time of his death. *Gillett–Netting,* 231 F.Supp.2d at 967.[5] The only remaining issue is whether Juliet and Piers, the undisputed biological children of a deceased, insured individual, are statuto-

4. The Commissioner argues that this interpretation is inconsistent with 20 C.F.R. § 404.355, which delineates, "Who is the insured's natural child?" in accordance with §§ 416(h)(2), (3). Again, nothing in the regulation states that parentage cannot be established by other means. We have interpreted 20 C.F.R. § 404.355 to apply to "child[ren] whose parents were never married," *Campbell ex rel. Campbell v. Apfel,* 177 F.3d 890, 891–92 (9th Cir.1999), and thus the regulation is not applicable to Juliet and Piers.

5. We note, however, that Netting left his wife an insurance policy, which provides financial support for Juliet and Piers.

rily deemed dependent on Netting without proof of actual dependency.

Under the Act, a claimant must show dependency on an insured wage earner in order to be entitled to child's insurance benefits. 42 U.S.C. § 402(d)(1). However, the Act statutorily deems broad categories of children to have been dependent on a deceased, insured parent without demonstrating actual dependency. It is well-settled that all legitimate children automatically are considered to have been dependent on the insured individual, absent narrow circumstances not present in this case. 42 U.S.C. § 402(d)(3); *Mathews v. Lucas*, 427 U.S. 495, 502, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976) (noting that "all legitimate children, are statutorily entitled . . . to survivorship benefits regardless of actual dependency"); *Smith*, 820 F.2d at 1094–95 ("Dependency is presumed if a child is legitimate unless adopted by another[.]"); *Doran v. Schweiker*, 681 F.2d 605, 606 n. 1 (9th Cir.1982) ("To establish eligibility for Social Security Insurance survivor benefits, children born of a legitimate marriage need only show that their deceased parent was fully insured.").

■ Similarly, "illegitimate" children who prove parentage under 42 U.S.C. §§ 416(h)(2), (3) are "deemed to be the legitimate child of such individual" and, therefore, are deemed to have been dependent on the insured wage earner. 42 U.S.C. § 402(d)(3). Thus, the provisions of § 416(h) described above typically come into play to prove dependency rather than parentage. In summary, through the Act's statutorily deemed dependency, any legitimate child, a child entitled under the intestacy laws of the insured parent's domicile to inherit personal property from the parent, a child whose illegitimacy results from a formal defect in the parents' purported marriage ceremony, and a child acknowledged in writing by the insured father as his son or daughter or judicially decreed (during the father's lifetime) to be such, are all deemed under the Act to be dependent upon the parent, unless the child has been adopted by some other individual, and thus are relieved of otherwise proving actual dependency.[6]
*Norton v. Mathews*, 427 U.S. 524, 527 n. 1, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976); *see also Mathews*, 427 U.S. at 502, 96 S.Ct. 2755; *Smith*, 820 F.2d at 1094–95; *Owens ex rel. Owens v. Schweiker*, 692 F.2d 80, 81 (9th Cir.1982). Dependency is a broad concept under the Act, whereby the vast majority of children are statutorily deemed dependent on their deceased parents, and only completely unacknowledged, illegitimate children must prove actual dependency in order to be entitled to child's insurance benefits. Moreover, the Act is construed liberally to ensure that children are provided for financially after the death of a parent. *See Smith*, 820 F.2d at 1095; *Doran*, 681 F.2d at 607.

Juliet and Piers are indisputably Netting's legitimate children under the law of the state in which they reside. "Arizona has eliminated the status of illegitimacy[.]" *State v. Mejia*, 97 Ariz. 215, 399 P.2d 116 (1965). In Arizona,"[e]very child is the legitimate child of its natural parents and is entitled to support and education as if born in lawful wedlock." Ariz.Rev.Stat. § 8–601. "It has long been the policy of th[e] state to protect innocent children from the omissions of their parents" by abolishing legal distinctions based on legitimacy. *Hurt v. Superior Court*, 124 Ariz.

---

6. An illegitimate child who does not meet one of these requirements can be deemed legitimate and dependent if she demonstrates both parentage and actual dependency, that is, that the "insured individual was living with or contributing to the support of the applicant at the time such insured individual died." *See* 42 U.S.C. §§ 402(d)(3), 416(h)(3)(C).

45, 601 P.2d 1329, 1331 (1979). Under Arizona law, Netting would be treated as the natural parent of Juliet and Piers and would have a legal obligation to support them if he were alive, although they were conceived using in-vitro fertilization, because he is their biological father and was married to the mother of the children. *See* Ariz.Rev.Stat. § 25–501(providing that children have a right to support from their natural parents; the biological father of a child born using artificial insemination is considered a natural parent if the father is married to the mother). Although Arizona law does not deal specifically with posthumously-conceived children, *every* child in Arizona, which necessarily includes Juliet and Piers, is the legitimate child of her or his natural parents.[7]

The Commissioner nevertheless argues that Juliet and Piers do not satisfy the "legitimate child" requirement, and therefore cannot be deemed dependent under § 402(d)(3), unless they also are able to inherit from Netting under state intestacy laws or meet one of the other provisions of § 416(h). This is not the case. Legitimacy in § 402(d)(3) is determined in accordance with state law. *See Jimenez v. Weinberger*, 417 U.S. 628, 635–36, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974) (noting that children who are considered legitimate under state law are entitled to child's insurance benefits without proving dependen-

cy). While § 416(h) provides alternative avenues for children to be deemed legitimate, nothing in the Act suggests that a child who is legitimate under state law separately must prove legitimacy under the Act. It would make little sense to require a child whose parents were married to demonstrate legitimacy by showing she meets a test set forth in § 416(h), for example by showing that her parent acknowledged her in writing or that a court determined her parentage prior to the parent's death.[8]

Because Juliet and Piers are Netting's legitimate children under Arizona law, they are deemed dependent under § 402(d)(3) and need not demonstrate actual dependency nor deemed dependency under the provisions of § 416(h).

## IV. CONCLUSION

As Netting's legitimate children, Juliet and Piers are conclusively deemed dependent on Netting under the Act and are entitled to child's insurance benefits based on his earnings. Accordingly, we **REVERSE** the decision of the district court and **REMAND** with instructions to further remand to the Commissioner of Social Security for an award of benefits.

---

7. This is not to say that every posthumously-conceived child in Arizona would be eligible for survivorship benefits on the basis of the earnings of the deceased sperm donor. If the sperm donor had not been married to the mother, Arizona would not treat him as the child's natural parent, and he likely would have no obligation to support the child if he were alive. In such circumstances, no eligibility for benefits would exist unless the Commissioner made a determination that the claimant was the dependent child of the deceased wage earner for purposes of the Act by virtue of satisfying one of the requirements in § 416(h).

8. Because Juliet and Piers are Netting's legitimate children under Arizona state law, we need not consider whether they could be deemed dependent for another reason, such as their ability to inherit property from their deceased father under Arizona intestacy laws. *See generally Woodward*, 760 N.E.2d at 257. As a practical matter, in most cases legitimate children would be able to inherit under state intestacy laws, but they need not *demonstrate* their ability to do so in order to be entitled to child's insurance benefits.