DAVIS, Circuit Judge, dissenting:
The majority contends that “the plain text of th[e]se provisions offers all of the *64 guidance that is needed,” Maj. Op. at 55, and I agree. But where the majority believes that “Congress plainly intended” that 42 U.S.C. § 416(h)(2)’s definition of “child” control, id. at 57, I believe just the opposite: it could not be more clear that Congress instructed us to apply 42 U.S.C. § 416(e) in this case. And even if § 416(h) were to apply, proper consideration of § 416(h)(2)(B) would require that we reverse the district court.
I.
This is not a case in which we must choose between two competing statutory definitions, for here Congress has chosen for us. The question before us is whether a posthumously conceived biological child is a “child” within the meaning of 42 U.S.C. § 402(d)(1), the provision guaranteeing benefits to a deceased wage earner’s children. And § 402(d)(1) itself begins, “Every child (as defined in section 416(e) of this title)....” (emphasis added). If that does not make Congress’s choice clear enough, Congress went on to specifically apply § 416(h)(2)’s definition of “child” shortly after, in § 402(d)(3): “For purposes of this paragraph, a child deemed to be a child of a fully or currently insured individual pursuant to section 416(h)(2)(B) or section 416(h)(3) of this title shall be deemed to be the legitimate child of such individual.” (emphasis added). That is, Congress specifically invoked § 416(e) in the provision at issue and went on to specifically invoke § 416(h) in a neighboring provision; it is difficult to imagine how Congress could have more clearly indicated that it understood the difference between the two definitions and was deliberately choosing to apply § 416(e)’s broader definition to the right-granting provision.
The majority dismisses this point, claiming “it is not at all unusual for Congress to refer explicitly only to one section even though some of that section’s terms are given their full import by another, unmentioned section.” Maj. Op. at 56. It cites only to 29 U.S.C. § 626(a), granting the Equal Employment Opportunity Commission investigative authority “in accordance with the powers and procedures provided in sections 209 and 211 of this title,” because § 209 itself merely empowers the EEOC to make use of investigatory powers granted to the Federal Trade Commission by 15 U.S.C. §§ 49-50. But § 209 specifically cites to the provisions it incorporates; here, the majority would ignore Congress’s express directions and insert an implicit citation internal to § 416(e). It is not clear to me how Congress’s decision not to recopy in full the powers granted the FTC in title 15 of the Code when granting these powers to the EEOC in title 42 is in any way relevant. The question raised by the majority’s approach is why we should ignore Congress’s explicit instruction that it was using “child” in § 402(d)(1) “as defined in section 416(e) of this title” and instead look to a different definition in § 416(h), especially when Congress specifically cited to § 416(h)’s definition in a neighboring provision.
A.
The majority’s approach, while professing deference to the plain meaning of the statute, does great violence to it. Subsection 416(e) begins, “The term ‘child’ means (1) the child or legally adopted child of an individual.... ” The majority would demote the first words of § 416(e) from Congressional instruction to irrelevant “tautology,” rendering the first half of the provision — “the child ... of an individual” — a nullity. Maj. Op. at 53-54.
Dismissing as tautological a definition of “child” that includes “the child ... of an individual” appears to commend itself to common sense, but it is sensible only if one *65 overlooks the purpose of statutory definitions. Often they function not like dictionary entries, which set out the meaning of a word by deconstructing it into component concepts, listing its connotations, or explaining its association to similar words, but rather as support for a kind of legislative shorthand. Statutory definitions allow drafters to avoid repeating cumbersome lists filled with qualifications, as they can instead substitute a single word or phrase as an abbreviation. In this case, § 416(e)’s dense, 521-word description of those who qualify for a surviving child’s benefits (including “(2) a stepchild who has been such stepchild for not less than one year immediately preceding the day ... (3) a person who is the grandchild or stepgrandchild of an individual or his spouse, but only if ... ”) can be abbreviated throughout the subchapter as “child.”
If one rejects the majority’s claim of “tautology” as I do and instead recognizes that Congress chose to include “the child ... of an individual” within the list of rights-holders, one is left with a familiar situation: a court is asked to determine whether a given factual situation fits within the class contemplated by the statute. That is, one must determine whether a posthumously conceived child is “the child ... of an individual.” Like any word, the word “child” comprises both a core of relations it clearly encompasses and a hazy periphery where the label becomes increasingly contested. Cf H.L.A. Hart, Positivism and the Separation of Law and Morals, 71 Harv. L.Rev. 593, 606-07 (1958) (famously distinguishing “the hard core of standard instances or settled meaning” from the “penumbra of debatable cases in which [the term or rule] [is] neither obviously applicable nor obviously ruled out”). But a biological child birthed by its biological mother is clearly at the very core of the meaning of “child.” (Even the majority grudgingly concedes that Congress’s use of the word “child” here “does aim at natural children.” Maj. Op. at 54.) The fact that appellant’s child was conceived after his father’s death does nothing to undermine the fact that, according to ordinary usage, her son is the “child” of his biological father. For the reasons given by the Third Circuit in Capoto ex rel. B.N.C. v. Comm’r of Soc. Sec., 631 F.3d 626 (3d Cir.2011), and the Ninth Circuit in Gillett-Netting v. Barnhart, 371 F.3d 593 (9th Cir.2004), I would find that both the plain meaning of the statute and the relevant legislative history instruct the Commissioner to include biological children within the meaning of “child” as used in § 402(d)(1).
B.
The majority justifies its reading of the statute by emphasizing § 416(e)’s “lack of guidance” and asserting that, as that subsection “cannot provide all of the answers,” one must turn to § 416(h)(2)(A), which “describes precisely how one ought to determine the meaning of ‘child’ under § 416(e)(1).” Maj. Op. at 54, 55. The majority’s certainty appears rooted in an instruction it quotes from § 416(h)(2)(A): “In determining whether an applicant is the child ... of a fully or currently insured individual for purposes of this subchapter, the Commissioner of Social Security shall apply such [state] law as would be applied in determining the devolution of intestate personal property....” Maj. Op. at 55. Yet this quotation is misleading in two respects.
1.
First, it fails to reproduce the second and final sentence of § 416(h)(2)(A), which reads, “Applicants who according to such [state] law would have the same status relative to taking intestate personal prop *66 erty as a child ... shall be deemed such.” (emphasis added). That is, § 416(h)(2)(A) requires precisely the same interpretation of “child” that the majority fled from in § 416(e)(1). One cannot reasonably compare a claimant’s status under intestacy to the status of “a child” until one settles on the definition of “child.” Thus it makes little sense to abandon § 416(e)(1) on the ground that the word “child” is vague in favor of § 416(h)(2)(A), which also requires an extraneous definition of “child.”
Moreover, this second sentence makes it pellucidly clear that § 416(h)(2)(A) supplements, rather than replaces § 416(e)(1). If one finds that a claimant fits within the definition of the comparator “child,” then obviously he or she will have “the same status relative to taking intestate personal property as a child.” Thus, any “child” within the meaning of § 416(e)(1) must, as a straightforward matter of logic, satisfy § 416(h)(2)(A). That this yields a strange result in a case like this one, where the relevant state intestacy law treats different classes of “children” differently and grants property to only some of them, underscores the difficulties with the majority’s attempt to cast § 416(h)(2)(A) in the role of deus ex machina.
As a supplementary provision that requires an independent definition of “child” but provides no additional aid in constructing one, § 416(h)(2)(A) is not a helpful alternative to § 416(e)(1) for present purposes. Under either provision, one must still wrestle with the definition of “child.”
And it is for this reason that the majority’s attempt to subordinate § 416(e) to § 416(h)(2)(A) fails. Recognizing that § 416(e)’s inclusion of adopted children, stepchildren, grandchildren, and step-grandchildren must have legal force — the Commissioner’s regulations include them, see 20 C.F.R. §§ 403.354, 356-59 — the majority suggests that § 416(e)(1) “clarifies that natural children and legally adopted children are included,” and likewise for sections (e)(2) and (e)(3) and the other relations. Maj. Op. at 56. But if § 416(h) controls, exactly where in the text of the provision do these other relations fit in? As the first sentence only refers to the “applicant,” it must be in the second sentence, which requires the Commissioner to compare the applicant’s would-be status under intestacy with the status of “a child.” And this would undo the majority’s construction, for it would simply reveal § 416(h)(2)(A) to be a supplement, not a replacement, for § 416(e): looking to § 416(e) for the definition of “child” in § 416(h)(2)(A)’s second sentence, each relation covered in § 416(e) would automatically pass, since in each case one simply asks the redundant question of whether, say, a step-grandchild inherits in the same manner as a stepgrandchild. If § 416(e) overrides the majority’s mistaken view of § 416(h)(2)(A) in the exotic case of step-grandchildren — that is, if one accepts the Commissioner’s position, as stated at 20 C.F.R. 404.358, and acknowledge that a stepgrandchild is entitled to benefits regardless of his or her ability to take under a particular state’s intestacy law — it is not apparent why the same would not be true in the case of a biological child.
2.
There is still more to be said. The majority’s use of the excerpt from § 416(h)(2)(A) is also misleading insofar as it claims that, given the paragraph’s “shall apply such [state] law” language, “[t]he text ... could hardly be more clear” about which provision applies. Maj. Op. at 54. That is, the majority appears to read the provision’s mandatory language — “for the purposes of this subchapter ... the Commissioner ... shall apply such [state intestacy] law” — to mean that § 416(h)(2)(A) is *67 a requirement that all claimants must meet. Yet, as the majority concedes earlier in the opinion, § 416(h) “also provides three additional gateways to child status for those who cannot establish it through § 416(h)(2)(A)’s intestacy provision.” Maj. Op. at 52. Thus § 416(h)(2)(A)’s “shall apply” language is not to be read as “shall only apply”; rather, Congress is simply instructing the Commissioner to follow the precise process of applying and comparing situations under state intestacy law, not restricting the Commissioner to look only at § 416(h)(2)(A).
The majority strains to cast § 416(h)(3), one of these alternative paths, as “an exception to a general requirement,” emphasizing that the provision states that a “son or daughter” who does not meet the requirements of § 416(h)(2)(A) or (B) “shall nevertheless be deemed to be the child of such insured individual.” Maj. Op. at 58 (emphasis added by majority opinion). This is apparently meant to shield from attack the majority’s conclusion that Congress was drafting “within the framework of the background intestacy provisions.” Maj. Op. at 58. The problem is that when Congress repeats this verbal formula, which first appears in § 416(h)(2)(B), in § 416(h)(3), paragraph (2)(B) is cited alongside paragraph (2)(A). And paragraph (2)(B) has nothing to do with state intestacy law: it qualifies the “son or daughter” of parents who “went through a marriage ceremony resulting in a purported marriage” that, “but for a legal impediment ... would have been a valid marriage.”
Furthermore, Congress’s decision to label these provisions as (2)(A) and (2)(B) undermines the majority’s suggestion that (2)(A) was meant to have pride of place as the “backbone” of the definitional framework. Maj. Op. at 57. Rather, it seems that when Congress instructed that the Commissioner “shall apply” state intestacy law and then compare the result to intestate takings of a “child,” the mandatory language was a means of instructing the Commissioner to follow a precise process, not a way of implicitly undercutting § 416(e). Indeed, I expect that if Congress were to draft language that gave primacy in defining “child” to a subpart within a subsection entitled “Determination of family status” over the entirety of a subsection entitled “Children” (within § 416, the “Definitions” section), such a command would not be left implicit. Cf. Whitman v. Am. Trucking Ass’ns, Inc., 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001) (Congress does not “hide elephants in mouseholes”).
Yet the majority disputes the conclusions that emerge from the Third and Ninth Circuits’ reviews of legislative history, which found that § 416(h) was meant to be additive — extending benefits to the children of unwed parents — rather than an attempt to supplant and, in places, narrow the scope of benefits promised by § 416(e)’s definition of “child.” See Maj. Op. at 56-58. It quotes from the Senate Finance Committee’s report on the 1965 amendments to the Social Security Act, which expanded children’s survivorship benefits (immediately granting benefits to an estimated twenty thousand people) “without regard to whether he has the status of a child under State inheritance laws.” S. Rep. 89-404, pt. 1, at 14 (1965), as reprinted in 1965 U.S.C.C.A.N. 1943, 1958 (emphasis added). This reference, says the majority, demonstrates that § 416(h)(2)(a)’s intestacy provisions are “the backbone of all child status determinations.” Maj. Op. at 57. But it is far more likely that Congress was simply referring back to the intestacy provisions because they were the first to extend coverage beyond biological children. As the Commissioner has conceded, Congress be *68 lieved that “all state laws ... provided for inheritance of marital children.” Br. of Appellee, at 33; see also 43 Fed.Reg. 57590, 57591 (1998) (finding that “a ‘child of a valid marriage’ has inheritance rights under the laws of all states”). The report’s reference to § 416(h)(2)(A) is simply a reference to an expanded scope of survivorship benefits reaching beyond marital children; not a suggestion that paragraph (2)(A) was limiting benefits granted via § 416(e)’s “plain language” definition.
In the absence of any indication that the statutory framework is not as it seems, there is no reason to imagine that § 416(h) somehow usurps § 416(e), and thus we should not second-guess Congress when it specifically cites to the definition of “child” in § 416(e) (and goes on to specifically cite to the differing definitions in § 416(h) in a following provision). The majority is correct that “[t]he text ... could hardly be more clear,” but it misapprehends that meaning. When Congress states in § 402(d)(1), “Every child (as defined in section Jpl6(e) of this title),” that is precisely where one should look for a definition. (emphasis added).
C.
The majority invokes Chevron deference to the Commissioner’s regulations to bolster its case. See Maj. Op. at 54. Yet even if the Commissioner can survive Chevron step one, his interpretation fails at step two because it presupposes that § 416(h) supplements, rather than replaces, § 416(e), and thus his refusal to recognize § 416(e)’s inclusion of biological children is not reasonable. The Commissioner, like the majority, simply misapprehends the statutory language and, most assuredly, the statutory purpose.
The Commissioner recognizes that § 416(e)’s list of beneficiaries controls; thus he provides in § 404.354, “You may be related to the insured person in one of several ways and be entitled to benefits as his or her child, i.e., as a natural child, legally adopted child, stepchild, grandchild, stepgrandchild, or equitably adopted child.” Sections 404.355-39 detail the means by which one may establish these relationships. Yet § 416(h) makes no mention of stepchildren, grandchildren, or stepgrandchildren; indeed no provision but § 416(e), accepted as a definition for “child” in § 402(d)(1), would authorize the Commissioner to grant all of these individuals benefits.
As the statute grants the Commissioner rulemaking authority, 42 U.S.C. § 405(a), his regulations are “entitled to deference if they resolve [any] statutory ambiguity in a reasonable manner.” Coeur Ala., Inc. v. Se. Ala. Conservation Council, — U.S. -, 129 S.Ct. 2458, 2469, 174 L.Ed.2d 193 (2009); see Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Though I believe that “Congress has directly spoken to the precise question at issue” and that “the intent of Congress is clear” on this point, Chevron, 467 U.S. at 842, 104 S.Ct. 2778, given that Congress specifically stated in § 402(d)(1) that it was using the word “child” “as defined in section 416(e) of th[at] title,” the Commissioner’s regulations would fail at Chevron step two. The question is not whether the Commissioner’s results are reasonable, but whether (assuming statutory ambiguity) his construction of the statute is reasonable. As it would be irrational to acknowledge § 416(e)’s force with respect to every listed relation but one, the Commissioner’s position is not entitled to deference here.
II.
And even if one did grant Chevron deference, agreeing to ignore § 416(e) and apply only § 416(h)’s definition of “child,” *69 appellant would be entitled to a reversal. Section 416(h)(2)(B) provides,
[An] applicant shall ... be deemed to be the child of [an] insured individual if such insured individual and the mother or father, as the case may be, of such applicant went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment described in the last sentence of paragraph (1)(B), would have been a valid marriage.
The last sentence of paragraph (1)(B) specifies that these “legal impediments]” include “the lack of dissolution of a previous marriage” and “a defect in the procedure followed in connection with such purported marriage.”
It is undisputed that W.M.S.’s parents, Mr. and Mrs. Schafer, were married in June 1992. If W.M.S. could show that there was some technical defect in the marriage paperwork, then, even under the majority’s reading of the statute, W.M.S. would qualify as a “child” under § 416(h)(2)(B). To deny him benefits because his parents’ marriage was valid would be bizarre. This provision again shows that Congress intended to include children of a valid marriage in its definition of “child,” for what possible purpose would Congress have for covering children of a technically invalid marriage but not those of legally valid ones?
To adopt such a reading of the statute would raise serious constitutional questions. Indeed, appellant has brought an equal protection challenge to such a construction of the statute. Though a non-suspect statutory distinction will survive an equal protection challenge “if there is any reasonably conceivable state of facts that could provide a rational basis for the classification,” FCC v. Beach Commc’ns, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993), such a distinction between valid and technically invalid marriages might well fail rational basis review.
Here the canon of constitutional avoidance fully applies. When “choosing between competing plausible interpretations of a statutory text,” courts are to choose in accordance with “the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts.” Clark v. Martinez, 543 U.S. 371, 382, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005). The simplest choice here (and, I believe, the legally correct one) would be to give effect to § 416(e)(1) and find that a biological child is, indeed, “the child ... of an individual.” But even within the majority’s view that § 416(h) overrides § 416(e) there exists a plausible reading of § 416(h)(2)(B) that avoids an irrational distinction favoring technically invalid marriages.
In particular, one might read § 416(h)(2)(B) to implicitly include valid marriages. Under this view, paragraph (2)(B) simply extends the benefits granted under paragraph (2) (A) — a provision thought to include any “child of a valid marriage,” 43 Fed.Reg. 57590, 57591 (1998) — to the children of marriages that Congress believed ought to be considered valid for its purposes.
Under this interpretation, any child of a marriage (who happened not to already qualify for benefits under paragraph (2)(A)) would satisfy § 416(h)’s definition of “child,” whether or not a technicality undermined the marriage’s validity. One would view the “but for” clause not as listing technical invalidity as a further requirement, but simply as excusing technical invalidity and extending benefits to reach the children of such marriages. Manifestly, this was Congress’s intent, and in fact the paragraph’s logical structure lends itself to such a reading. As formal logic would have it, it is true of validly *70 married spouses that they “went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment ..., would have been a valid marriage.” 42 U.S.C. § 416(h)(2)(B). The “but for” phrase simply instructs the Commissioner to consider a hypothetical scenario (thus the following subjunctive, “would have been”) in which any technical defects are ignored; that is, in which marriages that fail on account of a technicality are made to look identical to valid marriages. Though children of valid marriages need not avail themselves of Congress’s liberality, they, too, would be covered by paragraph (2)(B).
As § 416(h)(2)(B) is drafted in language logically applicable to valid marriages as well as technically invalid ones, and as the coverage of such was clearly Congress’s intent, this is at least a plausible reading of the provision. And since this construction would avoid a serious constitutional question, it is preferable to the majority’s reading, which would arbitrarily penalize the children of valid marriages because their parents’ marriage proceedings happened not to suffer from some technical defect.
III.
In this case a husband, facing the prospect of sterility just four months after marrying, voluntarily left behind his sperm for a singular purpose: to produce a child with his wife. That the two of them achieved their joint purpose because she did exactly what they both contemplated provides scant justification to distort statutory meaning, structure, and purpose and thereby disqualify their offspring from his federal statutory entitlement. The majority is surely correct in its implied lament that we five in a “brave new world,” one in which the law lags behind technology, as it ever has. But that truism has never defined a “hard case.” What must be recalled is that judicial opinions, like the statutes they interpret, are not merely words arranged on paper. They have real effects on real people.
Respectfully, I dissent.